COMMONWEALTH *vs.* THE PEOPLE'S FIVE CENTS SAVINGS BANK.

The legislature have power to impose upon savings banks an annual tax on account of their depositors, founded upon the amount of their deposits, to be assessed one half on the average amount of deposits for the six months preceding the first day of May, and the other half on the average amount for the six months preceding the first day of November; and if a statute imposing such taxes is passed in April, a tax may be levied under it founded upon the average amount of deposits for the six months preceding the first day of May of the same year.

BILL IN EQUITY brought by the treasurer and receiver general of the Commonwealth, alleging that the defendants are a savings bank and institution for savings incorporated under the laws of this commonwealth, and having their usual place of business in Boston, and are liable and bound to pay a tax on account of their depositors of one half of one per cent. *per annum* on the amount of their deposits, to be assessed one half of said annual tax on the average amount of their deposits for the six months preceding the first day of May, and the other on the average amount of their deposits for the six months preceding the first day of November, which tax is by law required to be paid semi-annually, &c.; that the treasurer has assessed upon the said corporation the amount of the tax first payable, to wit: the sum of $6929.44, which is the sum shown to be due by the return of the corporation made in conformity to the requirement of law; that the time for said payment has elapsed, and the defendants refuse to pay the same.* The prayer was for an injunction.

---

* The *St.* of 1862, c. 224, under which this tax was levied, was passed and took effect on the 30th of April 1862. It is entitled " An act to levy taxes on certain insurance companies and on depositors in savings banks," and provides as follows :

" Section 4. Every savings bank and institutions for savings, incorporated under the laws of this commonwealth, including the Mercantile Savings Institution in the city of Boston, shall pay to the treasurer of the Commonwealth a tax on account of its depositors of one half of one per cent. *per annum* on the amount of its deposits, to be assessed, one half of said annual tax on the average amount of its deposits for the six months preceding the first day of May, and the other on the average amount of its deposits for the six months preceding the first day of November.

Upon this bill a temporary injunction was issued, and the defendants appealed to the whole court.

*C. P. Huntington,* (*J. P. Healy* with him,) for the defendants. As a tax upon property, this act clearly cannot be sustained. *Portland Bank* v. *Apthorp,* 12 Mass. 252. It can only be sustained as an excise upon the commodity or privilege of the bank in its corporate capacity, or upon the commodity or privilege of each individual depositor. It cannot be sustained on the former ground. The phraseology of the title is significant. Dwarris on Sts. (2d ed.) 659. The language of § 4 is unequivocal. "Deposits" are moneys, and are no part of the corporate franchise. *Worcester County Inst. for Savings* v. *Worcester,* 10 Cush. 128. *Gordon* v. *Appeal Tax Court,* 3 How. (U. S.) 133, 150. Gen. Sts. *c.* 11, § 4. The savings banks are constituted mere agents for the collection of the tax, on account of depositors. Section 4 is to be read in the light of § 12. The property referred to in each is identical. But § 12 cannot refer to the franchise of the bank. See Bac. Ab. Statute I. Dwarris on Sts. (2d ed.) 572, 573, 579, 583, 648, 649. The tax cannot be construed as a tax on the individual privilege of depositors. As such it would be void. *Portland Bank* v. *Apthorp,* 12 Mass. 255. The true construction of the act is, that it lays the tax on property, as distinct from the privilege. As such, it is unconstitutional. *Camden & Amboy Railroad* v. *Commissioners of Appeal,* 3 Harrison, (N. J.) 71. *Camden & Amboy Railroad* v. *Hillegas,* Ib. 11. *State* v. *Berry,* 2 Harrison, (N. J.) 80. Even taking it to be an excise on the privilege. or commodity of the savings banks, it cannot be supported. Section 12 shows that

---

" Section 5. All taxes provided for by this act . . . . shall be paid semiannually within ten days after the first Mondays of June and December, each payment to be an assessment by the treasurer of one half the annual percentage.

" Section 12. All property taxed under the third and fourth sections of this act shall be otherwise exempt from taxation for the current year in which the tax is paid : and no savings bank shall be required to make any return of deposits in accordance with the provisions of the one hundred and fiftieth and one hundred and fifty-second sections of chapter fifty-seven of the General Statutes, but only of ·ollaterals held so long as this act continues in force."

it would not be reasonable. Such an excise would render the tax upon property unequal. *Providence Bank* v. *Billings*, 4 Pet. 561. *Mechanics', &c. Bank* v. *Debolt*, 1 Ohio (N. S.) 591, 600. *Debolt* v. *Ohio Life & Trust Co.* Ib. 577. The act exempts depositors who withdraw before a day named, and taxes those who continue. *State Bank of Ohio* v. *Knoop*, 16 How. (U. S.) 380. Opinion of Justices, 9 Cush. 609. *Worcester Ins. Co.* v. *Worcester*, 7 Cush. 604, 605. The tax already levied is retroactive in its operation.

*Foster*, A. G., for the Commonwealth, in addition to some of the cases cited by the defendants, cited *McCulloch* v. *Maryland*, 4 Wheat. 427; *Kirby* v. *Shaw*, 19 Penn. State R. 258; *People* v. *Mayor, &c. of Brooklyn*, 4 Comst. 419; *Dearborn* v. *Ames*, 8 Gray, 10; *Sutherland* v. *De Leon*, 1 Texas, 250; *Norwich* v. *County Commissioners*, 13 Pick. 60; *Lee* v. *Boston*, 2 Gray, 484, 493; *Smith* v. *Morrison*, 22 Pick. 433; *Lunt's case*, 6 Greenl. 414; *Commonwealth* v. *Blackington*, 24 Pick. 357; *Goddard, petitioner*, 16 Pick. 509; *Simmons* v. *The State*, 12 Missouri, 268; *Satterlee* v. *Matthewson*, 2 Pet. 380, 412.

BIGELOW, C. J. The question whether the defendants are liable to the Commonwealth for the tax set out in the bill, and are lawfully enjoined from the further prosecution of their business until the amount thereof is paid, depends entirely on the validity of that provision of *St.* 1862, c. 224, § 4, which is applicable to savings banks. It is contended by the defendants that this part of the statute is unconstitutional and invalid, and that the payment of the tax cannot be lawfully exacted from them.

The question thus raised is an important one, entitled to our full and grave consideration. The authority to impose taxes, while it is an inherent and essential power of government, which is fully recognized in our constitution and conferred on the legislature in clear and comprehensive terms, is nevertheless a delicate trust, nearly affecting the rights and interests of the citizens, and to be exercised carefully and within the exact limits which are prescribed by that clause in the frame of government which creates the power and defines the extent to which the legislature may go in its exercise. If they have exceeded it, if the

constitutional boundary has been overstepped, there can be no doubt of the right of the citizens to resist such unauthorized exercise of power, and of the duty of this court to declare such legislative action void, and to protect all persons against its unlawful exactions.

It is not contended on the part of the Commonwealth that the assessment in question can be maintained as an exercise of the powers conferred by Const. of Mass. *c.* 1, § 4, " to impose and levy proportional and reasonable assessments, rates and taxes upon all the inhabitants of, and persons resident, and estates lying, within the said commonwealth." Viewed as a tax assessed under this clause, it would be contrary to its provisions, because it is not proportional on all persons and estates in the Commonwealth, but is assessed on a certain class selected by the legislature for the specific purpose of imposing a tax. It is to be supported, if at all, as an excise or duty on the franchise of the defendants, under that branch of the section of the constitution already cited, which gives the power to the legislature " to impose and levy reasonable duties and excises upon any produce, goods, wares, merchandise and commodities whatsoever, brought into, produced, manufactured or being within the Commonwealth." If by a proper construction of the statute it can be deemed to be a duty or excise within the meaning of this clause in the constitution, there would seem to be no reason for doubt as to the power of the legislature to enact it; and the only question to be considered would be whether this power has been exercised in a reasonable and lawful manner. As an excise on the privilege or franchise belonging to the defendants, it would come within the case of *Portland Bank* v. *Apthorp*, 12 Mass. 252, a decision which has long been acquiesced in, and the reasoning and conclusion of which we see no ground to deny or call in question.

Before passing to a consideration of the question whether this provision of the statute is in contravention of the constitution, it may be well to repeat the rule of exposition which has been often enunciated by this court, that when a statute has been passed with all the forms and solemnities required to give

it the force of law, the presumption is in favor of its validity, and that the court will not declare it to be a violation of the fundamental principles of our government, and for that reason void, unless its invalidity is established beyond reasonable doubt. As a corollary of this well established rule, or as justly included within its scope, it may also be stated, that where a statute has been passed which from its nature is necessarily to be referred to the exercise of powers granted by a particular clause in the constitution, under one branch of which it would be clearly invalid, but under another it might be sustained as being within the limits of constitutional authority, it is the duty of this court to presume that the legislature intended to act under that portion which will support the statute and give it validity, unless its language is so clear and explicit as to render it impossible by any reasonable construction so to interpret it. It may be further added, that the presumptions thus existing in favor of the validity of a statute are to stand until the contrary is shown, and that it is the duty of a person who alleges that his rights are invaded or injuriously affected by a legislative act, to show that it does not come within the legitimate exercise of the powers conferred by the constitution, and is therefore void.

Having in mind these well settled rules of exposition, it appears to us that the assessment imposed by the provisions of the statute under consideration must be regarded as an excise or duty on the privilege or franchise of the corporation, and not as a direct tax on money in its hands belonging to depositors. In the first place, the mandate of the fourth section is clear and explicit. It is the corporation that is to make payment. If it fails to do so, then by the provisions of section eleventh it is liable not only to an action of contract for the amount of the tax, with costs and interest, but, what is more significant, it may be enjoined from the future exercise of its franchise until all taxes shall be fully paid. As the duty of making payment is usually devolved on those from whom a debt or charge is due, it is fair to infer, in the absence of any explicit provisions to the contrary, that the assessment was intended to be laid on the corporation by which it is to be paid, and from which it is to be exacted in case payment is not voluntarily made.

In the next place, the manner in which the amount of the assessment is to be ascertained clearly indicates that the tax is designed to be a corporate charge. It is not a tax levied on each deposit at a certain rate in proportion to its amount, but it is assessed on the amount of all the deposits in the bank, ascertained and fixed by the average sums which it has had in its hands during the six months preceding a specific day. It is the extent to which the corporation has exercised the franchise conferred on it by law, of receiving deposits during a certain period, that is made the basis on which to estimate the sum which is to be paid for the enjoyment of the privilege. It is difficult to see in what other mode a more just and equitable assessment could be laid on corporations of this peculiar character, under the authority to impose an excise or duty on their franchise. The main object for which they are instituted and clothed with cor porate powers is, that they " may receive on deposit for the use and benefit of the depositors all sums of money offered for that purpose." Gen. Sts. *c.* 57, § 141. In this mode, the profits and advantages arising from the use and investment of large sums and the benefits of large capital and associated wealth are secured to persons who have small amounts of money only, and who lack opportunities of keeping them safely and using them profitably. The average amount of money which a corporation thus receives is a fair measure of the benefit which it and those who are interested in its prosperity derive from the use of its corporate functions, and it may therefore well form the basis on which an excise or duty is to be estimated. It is the amount of business which such a bank transacts during a certain period, which displays its capacity and the value of the privilege which it enjoys under its charter. In this view, the assessment of the tax in question on the franchise would seem to be fair and reasonable It would certainly be otherwise, if it is regarded as a tax on depositors. In such case, it would seem that it ought to be apportioned among those who have had money deposited in the bank during the time for which it was the intention of the legislature to impose the tax. But by what rule is such apportionment to be made under this statute? The statute furnishes none. It

fixes only the mode in which the amount of the tax is to be ascertained; but this could not be applied to depositors so as to approximate to equality. Those who had withdrawn their deposits before the average required by the statute could be ascertained would either escape taxation entirely, or be assessed in a sum founded only on a conjecture as to the amount of the deposits which might be received after such withdrawal. If it should be assessed on those who were depositors at the time when the average was calculated, it would approach no nearer to a just and equitable assessment, because it would include those who had not enjoyed the benefits of the institution or shared its profits during the period for which the assessment was imposed. If it had been intended as a direct tax on the money of depositors in the custody of the bank, the statute would not have omitted to prescribe some definite rule for its assessment, at least so as to indicate on what class it was to fall, and by what ratio it was to be apportioned.

But it is urged on the part of the defendants, and this is the main argument in support of the construction of the statute on which they rely, that the tax is not merely imposed on the average amount of deposits in the bank, but that, by the terms of the statute, it is to be paid " on account of its depositors." We do not think, however, that this clause, when fairly understood and interpreted, at all weakens the force of the suggestions already made. Strictly speaking, every payment by a savings bank for a lawful purpose is made on account of its depositors. Unlike ordinary banks and other moneyed corporations, they do not hold property for use and investment, in order to accumulate profits which belong to the corporations, and over which they have unlimited control, either to retain them in their own hands or divide them among their stockholders. The money in the hands of savings banks is held in strict trust; it can be invested only in specific modes designated by law; after deducting reasonable expenses, its profits must be divided among the depositors in just proportions, and each depositor has the privilege of withdrawing his money at such reasonable times as may be prescribed by by-laws. The members, officers and managers

of these corporations have no private, personal or pecuniary interest in the property in the hands of the corporation. It all belongs to depositors, and is managed exclusively for their benefit. Gen. Sts. *c.* 57, §§ 141–147. Opinion of Justices, 9 Cush. 604, 609. A tax imposed on the franchise of a corporation, the power and authority of which is thus limited to holding, managing and investing property for the use and benefit of those who deposit their money in its keeping, and which has no corporate property distinct from that which they hold in special trust, and which has no stockholders or members who are interested in its profits, or who can receive dividends from its earnings, necessarily operates as an indirect assessment on those for whose use and benefit its corporate rights and privileges are granted and exercised. The money which the corporation pays in discharge of the excise imposed on it must necessarily be deducted in due proportion from the sum which is due to each depositor. In this view, but in no other sense, it may be properly said in the language of the statute to be " paid on account of its depositors." To the argument drawn from the title of the act, as indicating an intention to lay a tax on depositors, so far as it is entitled to any weight, the same considerations furnish a full and decisive answer. Certainly it is most just and reasonable that a privilege, or, to use the words of the constitution, " a commodity," which an act of incorporation furnishes to enable depositors to reap the advantages arising from the use of large capital for investment should bear a portion of the public burdens, in the form of an excise, in exchange for the great benefits which are conferred on those who enjoy the use of corporate powers.

The suggestions already made also afford a sufficient answer to the argument urged in behalf of the defendants, based on the provision in § 12 of the statute, which enacts that property taxed under the fourth section of the act, in the clause relating to savings banks, shall be otherwise exempt from taxation for the year for which the tax is paid. No doubt this provision, taken in connection with that which relieves savings banks from the duty of making returns to assessors, was intended to exempt

depositors from being assessed on moneys belonging to them in such banks, for state, county and town taxes. But this does not show that the previous provision was designed as a direct tax on depositors, and not as a duty or excise on the franchise of the banks. ' The sole purpose of the provision was to avoid double taxation, and as the payment of an excise by savings banks would from the nature of their franchises in effect operate to diminish the gains or profits which would otherwise accrue and be paid to depositors, as we have already stated, it was deemed just and equitable by the legislature to make a provision which should prevent the direct taxation of the same property, after it had been indirectly assessed by the imposition of an excise on the franchises of those corporations, to which its investment and management had been intrusted. If it be objected to this view of the effect of placing an excise on the franchises of savings banks, that it, in its essence and operation, is a direct tax on property, because the burden actually falls on depositors, the sufficient answer is, that this result flows from the peculiar nature of the franchise on which the tax is laid. The argument, therefore, which puts the denial of the validity of the assessment on such a ground, if pushed to its just and logical conclusion, would necessarily go to the extent of maintaining that the privilege or commodity exercised by savings banks would be entitled to entire exemption from all taxation in the nature of an excise or duty — a conclusion which is manifestly absurd.

These views of the proper construction of the terms of the statute and of the intentions of the legislature in imposing the tax in question are quite decisive of the remaining objections urged by the defendants against its validity. Regarded only as an excise or duty on the franchises of savings banks, it does not seem to us to be either unreasonable in itself or to cause undue inequality in the system of general taxation on property in the Commonwealth. It is to be remembered that perfect equality in the assessment of taxes is unattainable. . Approximation to it is all that can be had. Under every system of taxation, however wisely and carefully framed, a disproportionate share of the

public burden will be thrown on certain kinds of property, because they are visible and tangible, while others are of a nature to elude vigilance. It is only where statutes are passed which impose taxes on false and unjust principles, or operate to produce gross inequality, so that they cannot be deemed in any just sense proportional in their effect on those who are to bear public charges, that courts can interpose and arrest the course of legislation by declaring such enactments void. There is certainly nothing in the case before us which requires or would justify any such interposition. The exemption of depositors from direct taxation on the amount of their respective deposits in savings banks, by § 12, obviates an objection — that of double taxation, as already shown — which might otherwise have been urged against the reasonableness of the tax. Nor can it be justly said that this exemption is such as to render the general tax on property throughout the Commonwealth unequal and disproportionate. A large portion of such deposits being under five hundred dollars in amount, and for that reason not included in the returns to assessors required by Gen. Sts. *c.* 57, § 150, usually escapes taxation in the ordinary methods, while the residue is of an amount so comparatively insignificant that its exemption cannot essentially disturb the rates of taxation on other species of property. But if it were otherwise, we doubt whether it would furnish any ground for invalidating the tax on the corporation. That might be valid, although the exemption might be deemed void. Nor are we able to see that the objection urged against the statute that it is retrospective in its operations on savings banks has any solid foundation. If the tax was designed as an assessment on depositors, the objection would have been of more weight; but as imposing an excise on the franchise of such corporations, the statute cannot be regarded as retroactive. The purpose of the legislature was to establish a fair and just foundation for an estimate of the proposed tax. The subject to be taxed was the present existing value of the franchises of these corporations — that is, the amount of benefit and advantage which the charter of each bank conferred on those who held it and enjoyed its privileges. How could this

37 *

taxable capacity be more justly or accurately ascertained than by a reference to the extent of the business which it had done during a period of six months immediately preceding the time when the value of its franchise was to be ascertained for the purpose of taxation? It was fair to presume that the business of such a bank, after the passage of the act, would be as great as during the six months preceding it. This would therefore constitute a just and reasonable standard by which to measure the present value of its franchise for the purpose of assessing a tax thereon, and for this purpose only is it used. The excise is not laid on the business which each bank has transacted in the way of receiving deposits during the six months preceding June 1862, but upon the value of the franchise at that date; that is, its present capacity to transact business, and the amount and extent of its operations estimated by the standard of the average of deposits which it had on hand during the period immediately preceding. This is not a retroactive provision, but only a fair mode of ascertaining the existing value of a subject of taxation.

It was suggested that the imposition of any excise on savings banks was an infraction of the compact which the Commonwealth had made with the banks by the provisions in their charters, that all profits should be divided among depositors in just proportion. Waiving all other answers to this suggestion, it is sufficient to say that all these charters were granted under the constitution which authorizes the legislature to impose excises on them, and must be presumed to have been accepted with the necessary implication that they were to be subject to all such assessments as the legislature in the exercise of their constitutional authority might deem expedient and proper.

*Injunction continued.*