## SUPREME COURT — APPELLATE DIVISION — FIRST DEPARTMENT.

### November 17, 1922.

## THE PEOPLE v. FIORE AMANNA.

(203 App. Div. 548.)

(1) CONSPIRACY—INDICTMENT CHARGED DEFENDANTS WITH CONSPIRACY TO VIOLATE GENERAL BUSINESS LAW, § 340—DEMURRER INTERPOSED ON GROUND THAT ACTS CHARGED DO NOT CONSTITUTE CRIME—COMPLETED BUILDING FOUNDATION IS "COMMODITY OF COMMON USE" WITHIN THE MEANING OF GENERAL BUSINESS LAW, § 340—INDICTMENT IS VALID.

A completed building foundation, whether made of stone or concrete, is a "commodity of common use" within the meaning of that term as used in section 340 of the General Business Law providing that an agreement whereby a monopoly in the manufacture, production or sale in this state of any article or "commodity of common use" is or may be created, is against public policy, illegal and void. Such a conclusion cannot be affected by the fact that the price fixed for the foundation includes the supplying of labor for preparing and setting the foundation.

(2) SAME.

Accordingly, the acts charged in the indictments against the defendants constitute the crime of conspiracy, as it is alleged that the defendants conspired between and among themselves and with others " unlawfully to control and monopolize, in the said counties of New York and Bronx the selling, supplying and furnishing of 'stone, sand and cement for use in constructing foundations for buildings there, and the selling, supplying, furnishing and constructing of stone and concrete foundations for buildings there, and unlawfully to exclude, restrict, prevent and prohibit all persons who should not be members of the said Stone Mason Contractors Association from engaging in" said business, and that the defendants conspired unlawfully to limit and control the sale and supply of said materials and unlawfully conspired to restrain and prevent competition.

APPEAL by the plaintiff, The People of the State of New York, from a judgment and order of the Supreme Court, entered in the office of the clerk of the county of New York on

the 25th day of October, 1921, allowing the demurrer of the defendants to an indictment charging them with the crime of conspiracy, filed in said clerk's office on the 14th day of April, 1921. The demurrer was on the ground that the acts charged in the indictment do not constitute a crime. (See Penal Law, § 580, subd. 6; General Business Law, §§ 340, 341.)*

*Charles D. Newton, Attorney-General (Samuel Untermyer, Special Deputy Attorney-General,* of counsel), for the appellant.

*Thomas G. Price,* of counsel (*John W. Hannon* with him on the brief), for the respondents Amanna and others.

*John L. Lindsay,* for the respondent Joseph N. Gallick.

GREENBAUM, J.:

The indictment sets forth with much detail a series of acts which if proved establish an unlawful agreement among the defendants themselves, who were members of a certain corporation organized under the Membership Corporations Law of this State, and known as the Stone Mason Contractors Association, and with others for the purpose of creating and maintaining a monopoly in the production of what are known as stone and concrete building foundations, by preventing or restraining competition in the construction of such foundations.

The indictment, among other matters, specifically charges that on December 15, 1919, the defendants conspired between and among themselves and with others " unlawfully to control and monopolize, in the said counties of New York and Bronx the selling, supplying and furnishing of stone, sand and cement for use in constructing foundations for buildings there, and the selling, supplying, furnishing and constructing of stone and

---

* See Standard Engraving Co., Inc., v. Volz, 200 App. Div. 758; Buffalo Gravel Corporation v. Moore, 201 id. 242.—REP.

concrete foundations for buildings there, and unlawfully to exclude, restrict, prevent and prohibit all persons who should not be members of the said Stone Mason Contractors Association from engaging in the said county of New York or in the said county of Bronx, in the business of selling, supplying or furnishing stone, sand or cement for use in constructing foundations for buildings there or in the business of selling, supplying, furnishing or constructing stone or concrete foundations for buildings there, or in any such business, and unlawfully to restrain, remove, prevent and destroy competition in each and every such business in the said county of New York and in the said county of Bronx, and unlawfully to limit, fix and control in each of the said counties the sale and supply of stone, sand and cement for use in the construction of foundations for buildings and the construction, sale and supply of stone and concrete foundations for buildings, and unlawfully to restrain and prevent competition in each of the said counties in the supply and price of stone, sand and cement for use in the construction of foundations for buildings and in the supply and price of stone and concrete foundations for buildings."

The indictment also recites that in pursuance and in furtherance of the conspiracy set forth therein the Stone Mason Contractors Association fixed as the price to be charged by its members forty-five cents a cubic foot for stone foundations including all material and fifty-five cents a cubic foot for concrete foundations including all material.

Section 340 of the General Business Law provides: " Every contract, agreement, arrangement or combination whereby a monopoly in the manufacture, production or sale in this State of any article or commodity of common use is or may be created, established or maintained, or whereby competition in this State in the supply or price of any such article or commodity is or may be restrained or prevented, or whereby for the purpose of creating, establishing or maintaining a monopoly within this State of the manufacture, production or sale of any such article

or commodity, the free pursuit in this State of any lawful business, trade or occupation is or may be restricted or prevented, is hereby declared to be against public policy, illegal and void." This statute is also known as the Donnelly Anti-Trust Act and the Anti-Monopoly Act.

It should also be stated that upon the argument of the demurrer a paper writing called a " stipulation " was handed up to the court which was signed by the Attorney-General which reads as follows: " The People do not claim that the defendants purchased sand, stone and cement for the purpose of resale. They do, however, claim that they dealt in sand, stone and cement and purchased the same for use in the construction of foundations which they contracted to deliver completely constructed and that such foundations are commodities in common use although they involve the element of labor as a minor part of the cost of the foundation."

In allowing the demurrer the learned trial justice filed a memorandum which reads as follows: " The Attorney-General's stipulation is susceptible of the construction that no finding in the indictment is intended to charge a sale of any of the commodities in their essential state to customers. The charge thus amended is the furnishing of a foundation under contract to owners or builders wholly completed at prices fixed by compact of various persons engaged in the trade. This in no sense can be considered as a dealing in the separate commodities under a contract, agreement or understanding whereby competition in the supply or price thereof was or might be restrained or prevented."

It is undisputed that the indictment before us is not subject to successful attack unless the phrase " commodity of common use " in section 340 (supra) is not applicable to an agreement for the construction of completed building foundations.

The defendants contend that a building foundation is not an article or commodity of common use within the meaning of the act. It is undoubtedly true that the word " commodity " in

ordinary parlance refers to merchandise or movable personal property. But as a matter of fact it has a much wider signification than the popular idea of what is meant by a commodity.

In Cook on Combinations, Monopolies and Labor Unions (2d ed., p. 253) it is said: "What may be the subject of illegal restriction; e.g., tangible commodities; services.—The doctrine of the illegality of restrictions upon competition has been more commonly applied to tangible commodities. In the Anti-Trust Acts such commodities have been variously characterized not only as 'commodities,' but as 'merchandise,' 'produce,' 'products,' 'articles,' 'property,' 'article of trade' * * * and the like. And, although the doctrine has been more commonly applied to what is strictly or in a narrower sense a mere sale, it has a broader application. In the Anti-Trust Acts (sic) have been characterized as within the doctrine 'manufacture,' 'making,' 'mining,' 'exchange,' 'traffic,' 'production,' 'importation,' 'constructing,' etc. But the doctrine is applicable not only to tangible commodities, but to services, thus notably that of transportation."

The meaning of the word "commodity" has been passed upon by the courts in construing statutes which involved the sense in which the Legislature intended the word to be applied in the particular statute under review. Thus in Portland Bank v. Apthorp (12 Mass. 252), in which the court was asked to pass upon the constitutionality of a law taxing banks upon the amount of their actual paid in capital stock, the objection was urged that this was a special class tax and could not be imposed. The court held that the Legislature had not only the right to tax persons proportionately, but also to impose reasonable duties and excises upon any produce, goods, wares, merchandise, and "commodities whatsoever." In the course of its opinion the court said: A commodity embraces "everything which may be a subject of taxation" and signifies as well "convenience, privilege, profit and gains," and that the contention that the word

" commodity " applies to goods, wares and merchandise were only its " vulgar signification."

In Commonwealth v. Peoples' Five Cents Savings Bank (87 Mass. 428) the defendant questioned the constitutionality of the act imposing a tax on the amount of deposits in the savings bank upon the ground that that was special class legislation. Following the Portland Case (*supra*), which is therein cited with approval, the court said that the tax could be supported as an excise or duty on the franchise of the defendants, which gives the power to the Legislature to impose reasonable duties and excises upon " produce, goods, wares, merchandise and commodities whatsoever " and that the privilege to do business and earn profits from the use of investments of large sums of money is a commodity.

In Hamilton Co. v. Massachusetts (73 U. S. 632) the court was called upon to determine the constitutionality of a tax imposed by the State of Massachusetts upon the excess of market value of capital stock annually over the actual value of the real estate and machinery of the corporation. The tax was held lawful as a reasonable duty and excise on commodities within the State, the court citing with approval the Portland Bank Case (*supra*), holding that commodities meant " convenience, privilege, profit and gains."

In Hunt v. Riverside Cooperative Club (140 Mich. 538) the court unanimously decided that a combination of master plumbers which involved contracts for supplying and installing plumbers' supplies and fixtures restrained competition in the price of a commodity and came within the condemnation of the Michigan Anti-Trust Act. In that case the court said: " it is true that a plumber who, under contract, installs his supplies in a building, furnishes the labor which installs said supplies; but it is also true that by the performance of his contract the title of such supplies passes from him to the owner or the occupant of the building. These supplies are thus either sold or disposed of. It is unnecessary to determine whether or not the

statute prohibits contracts fixing and regulating the price of labor employed in installing the supplies sold, for it certainly does prohibit contracts which restrict competition by fixing the price of the supplies installed; and the statute was therefore violated when defendants agreed to restrict competition in contract work, for the effect and intent of that agreement was ' to keep the price ' of their supplies ' at a fixed or graduated figure * * * so as to * . * * preclude a free and unrestricted competition among themselves.' Nor is the agreement of the master plumbers unobjectionable because it leaves some opportunity for competition between them. They have agreed ' not to sell *. * * an article of merchandise * * * below a common standard figure or fixed value * * * so as to * * * preclude a free and unrestricted competition among themselves '; and this the statute in express terms forbids."

The purpose and methods of the Stone Mason Contractors Association as set forth in the indictment demonstrate beyond cavil a scheme designed to circumvent the anti-monopoly legislation of this State. The underlying idea which evidently prompted the formulation of the agreement under which the defendants operated was that since the mason's contract with the builder includes the furnishing of materials and labor there was no separate sale of materials to the builder, and hence since the statute has no application to contracts for work, labor and services, there was no violation of the law. There can be no doubt that the members of the contractors' associations by their agreement intended among other advantages to control the price of the materials which enter into the construction of foundations by the device of a fixed sum per cubic foot.

As between the builder and the stone mason contractor a foundation may properly be treated as a commodity sold in the same manner as ordinary merchandise even though under other circumstances it would be regarded as a part of the realty. The very scheme of compelling the builder to pay for founda-

tions at a given price per cubic foot indicates that the mason contractors regarded the finished product as though it were a piece of merchandise, sold by weight or measure.

The practical effect of the agreement which is assailed in the indictment is to prevent the builder from buying the stone, cement or sand which enter into the construction of foundations from those who are engaged in the sale of those materials and to enable the mason contractors to charge the builders therefor any price they saw fit. Such a conclusion cannot be affected by the fact that the price fixed for the foundations includes the supplying of labor for preparing and setting the foundations.

It seems to us, too, that the contention of the respondents on this appeal has impliedly been disposed of adversely to them in People v. Hettrick, in which the judgment of conviction affirmed by this court, without opinion (201 App. Div. 886), was recently affirmed in the Court of Appeals without opinion. (234 N. Y. 527.)

The crime there charged was the violation of sections 340 and 341 of the General Business Law and of section 580 of the Penal Law on the part of the defendant who conspired with others to promote the continuance and to extend the operation of a certain combination whereby competition in the business of furnishing, selling and installing plumbers' supplies and materials in buildings might be prevented. One of the points raised before the appellate courts was that the phrase " article or commodity of common use" does not include the labor required in installing plumbing fixtures in buildings and that the act merely applied to tangible articles of trade or commerce. It was claimed in that case as it is in this that while plumbing fixtures themselves are " articles or commodities" labor is not a commodity and hence the contracts with builders for plumbing to be installed in buildings, including as they did the labor of installation, were not within the contemplation of section 340 of the General Business Law. It was also argued that the

commodities that were furnished under the contract were merely incidental to the main contract which was for services and labor.

In behalf of the People it was contended that the work, labor and services were mere incidents to the installation of the plumbing materials. The Court of Appeals, however, affirmed the conviction.

It is difficult to discover any difference in principle between the facts here appearing and those involved in the Hettrick Case (supra). The only difference between the cases is in the character of the materials used. In the Hettrick case the contract embraced the supplying of plumbing materials, whereas in the instant case the agreement includes the supplying of stone, cement and sand. In both cases the contractor was also to supply the labor required for affixing the materials to the freehold.

The judgment and order appealed from should be reversed and the defendants' demurrer to the indictment overruled.

CLARKE, P. J., DOWLING and SMITH, JJ., concur.

Judgment and order reversed and defendants' demurrer overruled.

## NOTE ON CONSPIRACY IN BUSINESS — PENAL LAW, § 580.

*Definition.*—A conspiracy is a combination to do an illegal act by legal means, or any act by illegal means. People v. Klaw, 55 Misc. 72; People v. Morrison, 98 Misc. 555. The gist of the crime of conspiracy consists in a corrupt agreement between two or more individuals to do an unlawful act, unlawful either as a means or an end. The agreement may be established by direct proof or by inference, an actual criminal or wrongful purpose, however, must accompany the agreement. People v. Flack, 125 N. Y. 324.

Property, as used in subd. 5, when taken in connection with the words which precede it, refers to personal property only. People v. Weser, 186

N. Y. S. 647. It has been defined to be a combination between two or more persons, with the unity of design for a common purpose to do an unlawful act or a lawful act by unlawful means, and cannot be sustained by proof tending to establish merely separate causes of action against several defendants. Russell v. Stampers, 57 Misc. 96. There is no conspiracy where the uncontradicted evidence on a trial shows that although the defendant, a boy sixteen years of age, was discovered posting pasters which were designed to injure the business of a publishing company, he merely found and posted them innocently without any design to aid the original conspirators. People v. Chandler, 54 App. Div. 111.

A corporation engaged in masonry construction which, although willing to employ union labor, has been compelled by an association of stone masons unions and individuals connected with them to abandon the performance of its contracts because the president had been expelled from the association for nonpayment of dues is entitled to injunction and damages. Brescia Constr. Co. v. Stone Masons Contractors Assn., 195 App. Div. 647.

The refusal of a publishers association, which practically controls the publication and sale of all the newspapers in the city, to furnish newspapers to a newsdealer because he refuses to handle newspapers published by one of the members of the association, is an illegal combination in violation of subd. 5 of §. 580, Penal Law. Sulton v. Star Co., 106 Misc. 43.

Individuals, firms or corporations have no right to enter into a combination to prevent manufacturers of patent medicines from maintaining competition with others in the sale of their goods or from selling them in such manner and upon such terms as they shall desire or agree upon with their customers, and in case they do, boycott such articles and the manufacturer as well. Dissenting opinion of MARTIN, J., in Park, etc., Co. v. National Wholesale Druggist Assn., 175 N. Y. 1.

The mere issuance by a union of circulars appealing to the public not to patronize the plaintiff and the posting of small posters stating that the labor used by him is scab labor does not constitute an interference with his business for force, threats or intimidation within the meaning of section 580, subd. 5. People v. Radt, 71 N. Y. S. 846.

Workingmen may organize for purposes deemed beneficial to themselves, and in that organized capacity may determine that their members shall not work with nonmembers. Bassert v. Dhuy, 221 N. Y. 342.

As to intimidation of employees by strikers, see Michaels v. Hillman, 112 Misc. 395; Grand Shoe Co. v. Children's Shoe Workers Union, 187 N. Y. S. 886.

A combination for the purpose of coercing an employer to discharge a person employed in his factory because he is not a member of a union, is a conspiracy. Coon Co. v. Memhart, 112 Misc. 650.

Persons who own or control theatres throughout the country and book attractions at them so as to enable their companies to make continuous

tours and save traveling expenses, are not guilty of a conspiracy to prevent another from exercising a lawful trade or to commit acts injurious to trade or commerce because of the facts that they agree not to produce in their theatres attractions controlled by rival interests and only such attractions as agree not to play in rival theatres, in any city where they have a theatre, and bind parties by booking contracts to play in their theatres in cities where they have them or remain out of such cities and not to play in certain other cities during specified periods. People v. Klaw, 55 Misc. 72.

The exclusion of a dramatic critic from theatres controlled by a theatre managers association because of scurrilous and unjustifiable articles written by him which attacked members of the association and their patrons of Jewish faith, does not amount to a conspiracy to prevent the critic from exercising his lawful trade or calling. People v. Flynn, 139 N. Y. 180.

Where an indictment alleges that certain persons conspired to prevent another from exercising his lawful trade or calling of horseshoer, by threatening his customers to cause strikes on works on which their horses were used unless the customers refrained from having, and refused to have their horses shod by him, and also alleges that such threats have been made to certain named persons thereon, there is a sufficient allegation of a violation of subd. 5. People v. Davis, 159 App. Div. 464.

A landlord and superintendent of an apartment house are not guilty of conspiracy under subd. 5 of section 580 in entering the apartment of one of the tenants before the expiration of his lease for the purpose of making repairs. People v. Zittle, 114 Misc. 33.

A strike or boycott may be legal or illegal according to the acts involved therein. Bossert v. Dhuy, 221 N. Y. 343.

An employee has a right to threaten to terminate the employment with or without reason, and the employer has the right to threaten to discharge, striking employees may lawfully importune customers and business associates of the employer to cease business dealings with him. But such methods cannot be used in the furtherance of an unlawful or malicious purpose. Hence, in determining the rights of parties, motive is important, for if the primary purpose of such boycott be punishment, revenge or injury, then the possible good to labor conditions cannot be made a cloak to shield the actors from the consequence of acts done in furtherance of the unlawful purpose. Auburn Draying Co. v. Wardell, 178 App. Div. 270; Michaels v. Hillman, 111 Misc. 284.

An agreement between an association of stone mason contractors and stone masons unions, under which the unions agree to work exclusively for members of the association, and to help enforce the latter's decrees against expelled members, and against any persons or firms engaged in the mason trade and who are not members of the association, and under which the association agreed to employ only men who were members of the stone

masons unions, is illegal and against public policy, and tends to create a monopoly and to throttle competition. Brescia Const. Co. v. Stone Masons Contractors Assn., 195 App. Div. 647.

---

# COURT OF SPECIAL SESSIONS — NEW YORK — APPELLATE TERM — THIRD JUDICIAL DEPARTMENT.

## November 21, 1922.