## UNITED STATES v. CENTRAL SUPPLY ASS'N et al.

### No. 16750.

District Court, N. D. Ohio, E. D.

Sept. 2, 1941.

See, also, 37 F.Supp. 890.

Thurman Arnold, Asst. Atty. Gen., Emerich B. Freed, U. S. Atty., of Cleveland, Ohio, and Edward P. Hodges, Kenneth L. Kimble, Alfred Karsted, W. Wallace Kirkpatrick, Richard K. Decker, David J.

Clarke, and Alexander C. Cushing, Sp. Assts. to Atty. Gen., for plaintiff.

John Hadden, L. B. Ware, John T. Scott, George B. Harris, Bulkley & Butler, Ray T. Miller, C. W. Sellers, and James C. Connell, all of Cleveland, Ohio, for defendants.

WILKIN, District Judge.

■ All the demurrers and motions to quash are overruled. The allegations of the indictment are sufficient to show jurisdiction in this court. It is not necessary, and in many instances it would be impossible, to allege the exact place where a conspiracy was formed. The indictment alleges that certain acts in furtherance of the conspiracy were performed in this district. In the very nature of things the entire purpose of the alleged conspiracy could not be realized in any one district. The offense of combining to restrain interstate commerce is committed in any jurisdiction in which some act pursuant to the conspiracy has taken place. United States v. Trenton Potteries Co., 273 U.S. 392, 47 S.Ct. 377, 71 L.Ed. 700, 50 A.L.R. 989; United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129.

■ The indictment definitely and sufficiently alleges an offense against the law. It is not defective, vague, or bad for duplicity.

■ The indictment adequately apprises the defendants of the charge against them. Considering the extent of the operations described, the number of parties, and the complex nature of the business, the indictment is clear and distinct. Such confusion or complexity as exists is due, not to the allegations of the indictment, but was inherent in the nature of the business described. Here again, an indictment for conspiracy cannot be expected to describe the offense with as much precision and detail as would be required in describing a substantive offense. Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545; Mercer v. United States, 3 Cir., 1932, 61 F.2d 97.

■ The conspiracy set forth in the indictment is unlawful under the Sherman Act, and Section 1 of the Sherman Act, 15 U.S.C.A. § 1, is constitutional. Tigner v. Texas, 310 U.S. 141, 60 S.Ct. 879, 84 L.Ed. 1124, 130 A.L.R. 1321; Eastern States Retail Lumber Association v. United States, 234 U.S. 600, 34 S.Ct. 951, 58 L.Ed. 1490, L.R.A. 1915A, 788; Sugar Institute, Inc. v. United States, 297 U.S. 553, 56 S.Ct. 629, 80 L.Ed. 859.

■ The indictment alleges an offense against the labor unions and their officers. No exemption exists in favor of labor associations so far as the offense charged in the indictment is concerned. It is true that a labor union is not forbidden to strike or bargain collectively because the indirect or incidental effect of such strike or bargain would be to restrain interstate commerce. Republic Steel Corp. v. C. I. O., #19864, 6–18–41, this court.[1] But a labor union has no more right than any other association to enter into a conspiracy or combination the direct purpose of which is to restrain and hamper the free flow of interstate commerce. In the very cases on which the defendants rely, the Supreme Court recognized that the words of the Sherman Act are sufficiently broad to embrace to some extent and in some circumstances labor unions and their activities. It has been recognized that even though the activities of a conspirator may be lawful in and of themselves, yet if those activities take place in pursuance of an unlawful combination or conspiracy, their legality will not save the conspirator from punishment for violation of the Sherman Act. Apex Hosiery Co. v. Leader, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311, 128 A.L.R. 1044; Swift & Co. v. United States, 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518. The indictment alleges that the unions did much more than bargain for their own wages. It alleges that they conspired to restrict free competition in order to control prices and discriminate against other persons and associations not members of the conspiracy; it alleges that they conspired and cooperated to maintain a restricted system of distribution. In the Hutcheson case, United States v. Hutcheson, 312 U.S. 219, 61 S.Ct. 463, 85 L.Ed. 788, upon which defendants rely, the charge was that labor unions alone had restrained trade, and the court excluded from the ruling conspiracies in which labor and non-labor groups conspired together. The indictment here alleges that the unions conspired with manufacturers, jobbers, and others.

■ The trend of recent legislation and decisions has been to expand the political right "to assemble and petition for redress of grievances" to the economic right of la-

---

[1] No opinion for publication.

borers to assert a collective force for the protection of their own interests. But that right must not be construed as a license to create a monopoly or to conspire for the restraint of trade. Freedom is the aim of the law, and the emancipation of laborers from the economic coercion of employers, did not empower them to exert such pressure against others. The interest of the public in the free flow of interstate trade is protected by law against all combinations and conspiracies; and the associations of labor, or unions, are on a parity with the associations of business, both as to rights and responsibilities. The very right to organize and bargain entails the duty to refrain from organizing monopolies for the purpose of excluding other qualified persons or organizations from the exercise of such right.