CARGILL, Inc., v. BOARD OF TRADE OF CITY OF CHICAGO et al.

No. 9426.

Circuit Court of Appeals, Seventh Circuit.

Dec. 23, 1947.

---

[2] 28 U.S.C.A. following section 723c.

James E. Dorsey and Leavitt R. Barker, both of Minneapolis, Minn., and Leo F. Tierney and Louis A. Kohn, both of Chicago, Ill. (Dorsey, Colman, Barker, Scott & Barber, of Minneapolis, Minn., and Mayer, Meyer, Austrian & Platt, of Chicago, Ill., of counsel), for plaintiff-appellant.

Weymouth Kirkland, Howard Ellis, William H. Symmes, Andrew C. Hamilton, Bennitt E. Bates, Floyd E. Thompson, Frederick Mayer, Abraham L. Rittenberg, Walter Bachrach, Walter H. Moses and Stanley J. Morris, all of Chicago, Ill., for defendants-appellees.

Before EVANS and MINTON, Circuit Judges, and LINDLEY, District Judge.

MINTON, Circuit Judge.

The District Court sustained a motion to dismiss the plaintiff's amended and supplemental complaint, and the plaintiff has appealed. These material facts are alleged.

The plaintiff, a Delaware corporation, is a large dealer in grain. It is not a member of the Board of Trade of the City of Chicago, and its contracts herein referred to were handled through a member of the Board. The defendant Chicago Board of Trade, herein referred to as the Board, is a corporation organized and existing under the laws of Illinois. The defendant Board of Trade Clearing Corporation, herein referred to as Clearing, is a corporation organized and existing under the laws of Delaware and is an affiliate of the Board. The individual defendants are either officers or directors of the Board or of Clearing and as such officers and directors acted for and on behalf of the Board and Clearing in the actions hereinafter complained of.

The plaintiff in its business enters into futures contracts on the Board. It acquires such contracts in what are known as hedging operations and relies upon the defendants to maintain an orderly market in grain futures under conditions that will reflect the general value of grain. The Board and Clearing operate under certain rules, regulations, and by-laws by which Clearing becomes substituted as a seller to the buyer and a buyer to the seller upon all contracts for future delivery. All contracts of members for non-members are cleared through Clearing and are subject to the charter, by-laws, and regulations of Clearing. Unless otherwise provided, when a commodity is sold for delivery in any month, delivery may be made by the seller on any business day he elects in the month, and if not previously delivered, then delivery must be made on the last business day of the month. The Board has been designated by the Secretary of Agriculture as a contract market for grains, pursuant to the provisions of the Commodity Exchange Act.[1]

The Board had in existence at all times mentioned in the amended and supplemental complaint a Rule 251, which reads as follows: "Rule 251. Emergencies.—The Board shall have power to declare any day to be a holiday or to close the Exchange or to stop trading in any security or in any of the future contracts of any commodity, by

reason of any emergency or otherwise, and to make such Regulations in regard to deliveries and settlement prices as it may deem proper because thereof. All Exchange contracts shall be subject to the exercise by the Clearing House of the powers reserved to the Clearing House by its Charter, By-Laws, and Resolutions."

On and prior to May 8, 1946, the Office of Price Administration had maintained a ceiling on grains. On that date, the Government authorities notified the Board that effective May 13, 1946, the ceiling prices on grains would be substantially raised. The Government authorities at the time requested and recommended to the Board that all futures contracts open at the close of business on May 11 be settled at the then ceiling. On and prior to May 12, 1946, the plaintiff had entered into contracts of purchase for the delivery of corn in May, July, and September of 1946; oats in December, 1946; wheat in September and December, 1946; and rye in September, 1946.

It is alleged that upon receipt of the notification from the Government authorities of the impending price increases, the defendants immediately entered into a conspiracy in restraint of interstate trade and commerce in grain and grain futures, in violation of the Sherman Act.[2] The plaintiff brings this civil action as provided in Sections 4 and 16 of the Clayton Act.[3]

The acts of the defendants, complained of as parts of the conspiracy and combination in violation of the Sherman Act and in furtherance thereof, are the enactments of certain regulations by the Board and the effectuation thereof by Clearing. On May 12, 1946, the Board, acting under Emergency Rule 251, promulgated Regulation 1894 which forbade trading in futures contracts outstanding at the close of the business day May 11, except for purposes of liquidation, and directed that such liquidation take place at or below the old ceiling prices, and without consideration of the increased ceiling prices in determining penalties on defaults of such futures contracts. The plaintiff thereupon filed its first complaint in this action based upon the deprivation of benefits due it on its futures contracts of purchase.

On May 31, the Board, again acting under Rule 251, enacted its Regulations 1897 and 1898 which repealed Regulation 1894 by directing settlement of the now defaulted May futures contracts at the new ceilings and by reinstating the trading in futures contracts outstanding as of June 1 at or below the new ceiling prices. On June 4, the defendants caused Clearing to notify all its members that other parties were contesting the validity of Regulations 1897 and 1898, and to warn them that they would have to return monies paid thereunder if the Regulations were adjudged invalid. At this time, the plaintiff was entitled to receive from Clearing large sums of money under its May futures contracts, and also, by virtue of the rising prices, under its July, September, and December contracts. These sums, it is alleged, have not been fully paid.

On June 13, 1946, the Board enacted its Regulation 1899 which stopped as of that day all trading in futures contracts of the plaintiff and of others similarly situated and ordered Clearing to settle such contracts as of the closing exchange prices on that day. This regulation has been carried into effect, and the plaintiff allegedly has been deprived of the benefits of its contracts, the possible profits having been greatly increased by the lapse of the O. P. A. ceilings on grain on June 30, 1946.

After setting forth grounds for equity jurisdiction, the complaint seeks judgment against the defendants and each of them for treble damages in the sum of $10,624,867.50, plus costs and attorneys' fees, and injunctions against their price-fixing and interference with free and open trading.

The sole charge of this amended and supplemental complaint, then, is that the defendants' actions in promulgating and enforcing these regulations were a violation of Section 1 of the Sherman Act. The regulations of the Board are not challenged except as they are alleged to have violated the Sherman Act.

We have held in Daniel et al. v. Board of Trade of City of Chicago et al.,

---

[2] 15 U.S.C.A. § 1.

[3] 15 U.S.C.A. §§ 15, 26.

164 F.2d 815, this day decided, that these regulations were valid and binding upon members of the contract market. They are likewise binding upon one who, like the plaintiff, is not a member but trades on the market through members. Thomson v. Thomson et al., 315 Ill. 521, 530, 146 N.E. 451, 455.

■ As we understand the plaintiff, as far as its position is concerned it makes no difference whether the Board's regulations are valid or invalid. The plaintiff contends that they amount to price-fixing and are in restraint of trade in violation of the Sherman Act.

The defendant Board is the largest grain market in the world. When the Office of Price Administration announced the increases in ceiling prices on grains, a crisis and an emergency confronted the Board, and the Board acted under Rule 251, applicable to emergencies. The Board owed a duty to the public and to all parties trading upon the market to act in the utmost good faith in the general interest. As we held in Daniel et al v. Board of Trade of City of Chicago et al., supra, if the defendants acted in good faith, they were authorized by the rules, regulations, and by-laws of the Board and Clearing, which were binding upon the plaintiff as a trader in the market, to act for both parties to the transactions in situations involving the termination of trade in certain futures contracts and the liquidation thereof. This was not price-fixing. It was the establishment of a measure of damages for the liquidation of the contracts terminated and in which there was to be no further trading. Thereafter, these contracts were not in the market for anything but settlement or liquidation upon the terms set forth in the regulations. There was no trading in these contracts at the liquidation figure, but a clearing of the way for trading. Here we have the settlement or liquidation of contracts which the parties by their duly authorized agents have terminated. The settlement is upon terms that the parties through their agents have agreed upon. Such termination and settlement is not price-fixing any more than any

termination and settlement of contractual obligations by mutual agreement of the parties is price-fixing. No other trading on the market was affected by the settlement of these contracts.

Neither is the termination and settlement an illegal restraint of commerce. Almost every act of an agency such as the Board and Clearing affects or restrains commerce in some respect, but such restraints as may be within the rule of reason are not unlawful. Board of Trade of City of Chicago et al. v. United States, 246 U.S. 231, 38 S.Ct. 242, 62 L.Ed. 683, Ann.Cas.1918D, 1207. The acts of the defendants rather than being in restraint of commerce, were in aid of commerce in facilitating future trading on the market. Only the bad faith of the defendants in the discharge of their duties under the emergency in which they purported to act can vitiate the defendants' action. No such claim of bad faith is made in this case.

We have been cited no case which holds that such action as is here charged to the defendants amounts to price-fixing. We have been cited cases such as United States v. Socony-Vacuum Oil Co., Inc. et al., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129, and United States v. Trenton Potteries Company et al., 273 U.S. 392, 47 S.Ct. 377, 71 L. Ed. 700, 50 A.L.R. 989. These cases do not define and delineate what is price-fixing. They go only to the proposition that if there is price-fixing, it is per se an unreasonable restraint of trade. We, of course, would so hold here if we thought the defendants' acts were price-fixing. We are of the opinion that such acts do not constitute price-fixing. There was no trading in any grain commodity on the market maintained by the defendant Board as a result of the Board's action taken with respect to the plaintiff's futures contracts. Trading on these contracts was stopped and liquidation was provided for under the rules, regulations, and by-laws which, in the absence of bad faith amounting to fraud, bound all the parties.

The District Court properly sustained a motion to dismiss, and the judgment is affirmed.