**UNITED STATES v. NATIONAL ASS'N OF REAL ESTATE BOARDS et al.**

**Civ. A. No. 3472–47.**

United States District Court
District of Columbia.

June 28, 1949.

Victor H. Kramer, Herbert N. Maletz, and C. Heyward Belser, all of Washington, D. C., for plaintiff.

Roger J. Whiteford and Jo V. Morgan, Jr., both of Washington, D. C., for defendants National Association of Real Estate Boards and Herbert U. Nelson.

William E. Leahy and William J. Hughes, Jr., both of Washington, D. C., for defendants Washington Real Estate Board and others.

A. K. Shipe, of Washington, D. C., for defendant J. Hawley Smith.

HOLTZOFF, District Judge.

This is a civil action by the United States for an injunction to restrain the defendants from continuing alleged violations of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note. The suit is brought under Section 3 of the Act, U.S.C.A., Title 15, § 3. The pertinent portions of this section are as follows:

"Every contract, combination in form of trust or otherwise, or conspiracy, in restraint of trade or commerce in \* \* \* the District of Columbia \* \* \* is declared illegal."

The defendants in this case are, first, the Washington Real Estate Board, which is a corporation having its place of business in the District of Columbia. Other defendants are members of the Board, who are sued as a class, a few of the members being named as representatives of the class. Finally, there is also joined as a defendant the National Association of Real Estate Boards, which is a corporation having its principal place of business in Chicago, Il-

linois. The National Association comprises among its members various local real estate boards, and the Washington Real Estate Board is one of these members.

The Government contends that the defendants have combined to fix real estate brokerage commissions to be charged by real estate brokers in the District of Columbia. The Government urges that this activity constitutes a violation of the Sherman Anti-Trust Act.

In brief, the evidence shows that the membership of the Washington Board embraces about 250 real estate brokers out of a total number of about 2,000 brokers operating in the District of Columbia. The Washington Board has for many years prescribed fixed rates of commissions to be paid to brokers on sales of real property. The rates are published and are readily available to the public. All members of the Board are urged to use these rates. Actually, both members and many nonmembers employ them. There is nothing clandestine or surreptitious about this activity of the Washington Board. The National Association has been joined as a defendant on the theory that it has encouraged and has incited the Washington Board to fix and prescribe rates of commissions to be charged by the members of the latter.

In 1943 the rates were changed, resulting in higher charges in many instances and in lower commissions in other situations. In actual practice, the prescribed rates of commissions are used in the great majority of transactions, although at times, in exceptional situations, a lower charge is made than that prescribed by the Board. For example, smaller commissions than the standard rate have been charged in connection with large developments comprising a great many homes.

No evidence has been introduced tending to show that the standard rate of commissions prescribed by the Washington Board is unreasonable or excessive or that this activity unduly or unreasonably restrains competition as between brokers or adversely affects the sales of real property. On the contrary, there is evidence in the record to the effect that before the Board attempted to fix standard commission rates there was chaos and confusion, resulting in occasional overcharges on the part of the less scrupulous members of the craft, and that one of the purposes of the Board was to eliminate this undesirable condition. The Government contends, however, that irrespective of whether it is reasonable or laudable, the fixing of commission rates is illegal per se and constitutes a violation of the Sherman Act.

Ever since the decisions of the Supreme Court in Standard Oil Co. v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619, 34 L.R.A.,N.S., 834, Ann.Cas.1912D, 734, and United States v. American Tobacco Co., 221 U.S. 106, 31 S.Ct. 632, 55 L.Ed. 663, it has been consistently held that the Sherman Act does not ban all restraints of trade, but proscribes only those that are unreasonable. In the two cases to which I have referred, the Court held that the Sherman Act must be construed in the light of reason and that the rule of reason must prevail.

In recent years it has been held by the Supreme Court that price-fixing is per se an unreasonable restraint of trade and, therefore, illegal in and of itself, even under the so-called rule of reason. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129, and United States v. Trenton Potteries Co., 273 U.S. 392, 47 S.Ct. 377, 71 L.Ed. 700, 50 A.L.R. 989. The cases in which this doctrine has been formulated and enunciated, however, involved prices of commodities and of articles of trade. This principle has never been invoked, so far at any rate, in connection with charges for personal service. There is a vast distinction in principle between fixing the prices of commodities or articles, on the one hand, and prescribing charges for personal services, on the other hand.

A statement of the pertinent public policy in respect to personal services is to be found in the Clayton Act, U.S.C.A., Title 15, § 17. The statement is as follows:

"The labor of a human being is not a commodity or article of commerce."

This is a very important, basic pronouncement. The term "labor" as used in the Clayton Act is not limited to the work of manual laborers or of mechanics. It

comprises intellectual labor as well. Neither is the term restricted to the work of the poor or the needy. Thus there are labor unions of mechanics, of clerks, of teachers, and of airplane pilots. Many other similar instances might be adduced. All of these organizations fix wages or salaries to be charged by their members. Such activities have never been held to form violations of the Sherman Act per se.

A real estate board may in a sense be likened to a labor union of real estate brokers. Admittedly there is no case in the Federal courts that has applied to personal services the rule that the fixing of prices of commodities or articles is per se an unreasonable restraint of trade. To contract for one's personal services is a fundamental right of every man. For men to combine to regulate the compensation to be charged by them for their own services is also entirely legal. While this right has been generally recognized in respect to persons who toil for wages or salaries, no reason appears discernible why it is not equally applicable in principle to those persons who work for commissions. The instant case appears to be the first occasion in the history of the enforcement of the Sherman Act that the Government has challenged this right.

■ It is a matter of common knowledge that rates of commissions for brokers' services of various kinds have been openly prescribed by numerous organizations of brokers for a great many years. This activity has never been condemned as violative of the Sherman Act, and the Government has never so contended prior to this case. On the contrary, the resulting stabilization of charges and the consequent uniformity has generally been considered as being in the public interest. No reason is perceived for changing these principles as they have been heretofore understood.

■ The Court is of the opinion that for persons engaged in a particular occupation to fix or prescribe a standard charge for their services does not alone and of itself create an unreasonable restraint of trade in violation of the Sherman Act. A different problem might be presented if the

rates fixed were shown to be unreasonable or oppressive in themselves or if it appeared that they resulted in a substantial diminution of competition or otherwise created an unreasonable restraint of trade or commerce. There is no such showing or even contention in this case.

Judgment for the defendants.

Counsel will submit proposed findings of fact and conclusions of law.