DRURY INN—COLORADO SPRINGS, a Joint Venture between Drury Inns Inc., a Missouri Corporation and Lincoln National Realty Corporation, an Indiana Corporation, Plaintiff–Appellant,

v.

The OLIVE COMPANY, a Colorado Corporation, Defendant–Appellee.

No. 88–1185.

United States Court of Appeals,
Tenth Circuit.

June 26, 1989.

Paul F. Hultin (Randall G. Alt with him, on the briefs) of Parcel, Mauro, Hultin & Spaanstra, Denver, Colo., for plaintiff-appellant.

John M. Vaught (Peter C. Houtsma and Andrew I. Gavil with him, on the brief) of Holland & Hart, Denver, Colo., for defendant-appellee.

Before LOGAN, MOORE and BALDOCK, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

The single but difficult issue for our review is whether a restrictive covenant in a real estate sales contract constitutes a per se violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and the Colorado Restraint of Trade and Commerce Act, Colo. Rev.Stat. § 6–4–101 (1973), and is thus unenforceable in an action for breach of contract. We believe it does not and reverse the judgment of the district court granting summary judgment for defendant.

## I.

In 1982, The Olive Company, a Colorado corporation engaged in real estate development, sold land to plaintiff Drury Inn—Colorado Springs, on which the Drury Inn Motel was subsequently constructed and opened for business. Because Drury purchased only a portion of a larger tract owned by Olive, the parties agreed to restrict the sale of the remaining land. Paragraph 8 of their contract stated:

> 8. Seller agrees not to sell any portion of the remaining site to any potential hotel/motel competitor of the Purchaser before June 1, 1985.

In a later exchange of letters, the parties defined "potential hotel/motel competitor" more specifically and substituted the "clarification" that a competing motel "shall be defined as a motel whose room rates are within 20% of the Drury Inn." Soon after this exchange, Olive sold adjacent property to Chamak Enterprises, which built and, in July 1984,[1] opened a Super 8 Motel, a budget motel whose average room rate was within 20% of Drury's then current room charge.[2]

Consequently, Drury filed an action for damages for Olive's alleged breach of the restrictive covenant and moved for summary judgment on the issue of liability. Olive filed a cross motion for summary judgment on the ground the restrictive covenant violates federal and state antitrust law. Characterizing the covenant as a naked agreement to fix prices and blatant attempt to exclude competition, defendant urged the district court find the Sherman Act per se forbade its enforcement. Drury maintained the covenant was ancillary to a valid real estate contract, supported by bargained for consideration, and executed by parties not in competition with each other.

Acknowledging this case "does not present the classic situation where a number of competitors conspire to fix prices on an industry-wide basis," the district court, nevertheless, found it was "clear beyond question that the covenant at issue was intended to serve no other purpose than the exclusion of some type of competition." To the court, the bright line between this case and those triggering rule of reason analysis was price, the central nerve core in a competitive system. Had the covenant only eliminated a potential hotel/motel competitor, defendant conceded and the court agreed, a rule of reason analysis would be warranted. However, because the court was convinced the intent of the parties was to fix prices, it rejected plaintiff's contentions the agreement was ancil-

---

1. The Drury Inn began operations in June 1984.

2. Olive sold the remaining site in this development to Texian—Colorado Springs, Ltd., which constructed and presently operates a Texian Inn Motel.

lary to a legitimate business transaction; was sufficiently limited in time, 2½ years, and geographic area, the adjacent 13.5 acres, to preclude an effect on the market for motel rooms in the Colorado Springs area; and did not involve competitors. Significant in the court's analysis was the parties' understanding that defendant would "monitor" the room rates of potential motels on the site "to ensure compliance with the protective covenant." (Order at 3, citing Answer to Defendant's Interrogatory No. 41). To support its conclusion, the court relied on *Arizona v. Maricopa County Medical Soc'y*, 457 U.S. 332, 102 S.Ct. 2466, 73 L.Ed.2d 48 (1982); *National Soc'y of Professional Engr's v. United States*, 435 U.S. 679, 98 S.Ct. 1355, 55 L.Ed.2d 637 (1978); *Keifer–Stewart Co. v. Joseph E. Seagram & Sons*, 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219 (1951); and *United States v. Socony–Vacuum Oil Co.*, 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940).

## II.

Read literally, Section 1 of the Sherman Act prohibits "*[e]very* contract, combination ... or conspiracy, in restraint of trade." 15 U.S.C. § 1 (emphasis added). Despite this broad sweep, the courts have understood that Congress meant to outlaw only "unreasonable" restraints of trade since all contracts alter trade in some manner. *Maricopa County Medical Soc'y*, 457 U.S. at 342–43, 102 S.Ct. at 2472–73; *Motive Parts Warehouse v. Facet Enterprises*, 774 F.2d 380, 386 (10th Cir.1985). Thus, before the onus of the Sherman Act falls, a court must decide whether the activity is reasonable. The framework for this analysis was articulated by Justice Brandeis in *Board of Trade v. United States*, 246 U.S. 231, 238, 38 S.Ct. 242, 243–44, 62 L.Ed. 683 (1918):

> The true test of legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition. To determine that question the court must ordinarily consider the facts peculiar to the business to which the restraint

is applied; its condition before and after the restraint was imposed; the nature of the restraint and its effect, actual or probable. The history of the restraint, the evil believed to exist, the reason for adopting the particular remedy, the purpose or end sought to be attained, are all relevant facts. This is not because a good intention will save an otherwise objectionable regulation or the reverse; but because knowledge of intent may help the court to interpret facts and to predict consequences.

■ Certain practices, however, were deemed to be so pernicious as to fall outside of this analysis and be conclusively presumed to violate Section 1. *"Per se* treatment, a conclusive presumption of unreasonableness, is reserved for practices that experience has demonstrated are almost always anticompetitive." *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1480 (9th Cir.1986). Horizontal price fixing, *United States v. Trenton Potteries*, 273 U.S. 392, 47 S.Ct. 377, 71 L.Ed. 700 (1927) (agreement by manufacturers of 82% of all lavatory fixtures to fix prices and limit sales); *United States v. Socony–Vacuum Oil Co.*, 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940) (agreement by various petroleum associations to purchase surplus gas at agreed price in return for reduction of production of surplus gas); concerted refusals to deal or boycotts, *Klor's, Inc. v. Broadway–Hale Stores, Inc.*, 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959) (department store chain pressured manufacturers to refuse to deal with competing retailer); and tying arrangements, an "agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product," *Northern Pac. Ry. Co. v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958) (association of 18 railroads operating west of Mississippi established freight rates for lines), receive per se treatment. In these settings, the agreement itself is unlawful without an eye on the purpose and effect of the action. "In fullest flower, a per se rule condemns conduct without proof of power, effect, or purpose and without hearing

claims of legitimate objectives." 7 P. Aree-da, *Antitrust Law* ¶ 1509, at 409 (1986).

■ When we plant the restrictive covenant at issue in this garden, it withers under Sherman's glare. The district court focused only on price, that is, the setting of a 20% range in which a competitor could not sell hotel/motel rooms. Within the facts and circumstances of this case, however, the price term is descriptive only and unrelated to the conduct and action intended by the agreement. In this single transaction, the parties intended to transfer real property. As a facet of the exchange, they agreed to preserve the quality of the specific bargain by describing the sale of adjacent land in terms of potential competition. To go beyond this intent and infer power to affect competition within the Sherman Act's meaning improperly intrudes federal antitrust principles into state common law. The Sherman Act surely distinguishes between competition and predation, between individual actors and cartels, and between ancillary restraints and those which interfere directly with "the free play of market forces." *Socony–Vacuum Oil Co.*, 310 U.S. at 221, 60 S.Ct. at 843. "Section 1 cannot supply private parties with a tool to redress ordinary business torts because § 1 forbids only those restraints damaging to competition." *Lektro–Vend Corp. v. Vendo Co.*, 660 F.2d 255, 268 (7th Cir.1981), *cert. denied*, 455 U.S. 921, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982).

Because "price fixing do[es] not have absolute meaning," 7 P. Areeda, ¶ 1510c, at 421, we cannot merely look at this agreement in the light of stare decisis to characterize it as naked price fixing. We must go beyond the words and inquire whether the covenant affects competition. As the Court stated in *National Collegiate Athletic Ass'n v. Board of Regents*, 468 U.S. 85, 103–04, 104 S.Ct. 2948, 2961–62, 82 L.Ed.2d 70 (1984):

*Per se* rules are invoked *when surrounding circumstances* make the *likelihood of anticompetitive conduct* so great as to render unjustified further examination of the challenged conduct. But whether the ultimate finding is the product of a presumption or actual market analysis, the *essential inquiry* remains the same—whether or not the challenged restraint enhances competition. Under the Sherman Act the criterion to be used in judging the validity of a restraint on trade is its impact on competition.

(Emphasis added.)

When we look at the circumstances surrounding this transaction, we cannot say that the parties' agreement to restrict competition violates the per se rule against price fixing. The rationale of the rule simply does not fit into this transaction. Price alone does not make the difference when market power is absent, *See* 7 P. Areeda, ¶ 1510c, at 422, and we cannot infer the existence of market power from the agreement alone.

Although the district court found it significant that the covenant required Olive to police and monitor the room rates of potential competitors, in the absence of all the other indicia of anticompetitive conduct, we do not believe this obligation fills the void. At best, the record reveals the parties' understanding and interpretation of the condition varied.[3] At worst, the condition was sufficiently undefined within a potential price fixing scheme or covenant not to compete to render it illusory.

Thus, in the absence of an explicit cartel arrangement or even one that we could infer from the agreement, we cannot label the Drury–Olive restrictive covenant a prohibited price fixing agreement. No other evidence offers a sufficient basis to conclude the Sherman Act discourages the conduct present in this case.[4]

---

3. In its response to Drury's motion for summary judgment, Olive stated that the parties did not contemplate that Olive would guarantee Super 8's room rates. Robert Drury stated he understood Olive would "police the ingredients of the covenant." (Ex. B).

4. Because we are dealing with the sale of real property which involves different underlying legal relationships than those arising between a lessor and lessee, we are unpersuaded that the parties' citation of shopping center cases is entirely apposite. *See, e.g., Harold Friedman Inc. v. Thorofare Markets Inc.*, 587 F.2d 127 (3d

### III.

We are equally reluctant to allow introduction of Section 1 into this case as an affirmative defense to an otherwise "intelligible economic transaction in itself." *Kelly v. Kosuga*, 358 U.S. 516, 521, 79 S.Ct. 429, 432, 3 L.Ed.2d 475 (1959). In *Kelly*, several onion growers, who had agreed to buy part of another's onion stock and subsequently withhold it from the market in a scheme to fix the price and limit the amount of onions sold, raised the illegality of the contract under the Sherman Act as a defense to their default on payment of the purchase price. "As a defense to an action based on contract, the plea of illegality based on violation of the Sherman Act has not met with much favor in this Court." *Id.* at 518, 79 S.Ct. at 431. The Court reasoned that the "avoidance of private contracts as a sanction" could not be added to the Sherman Act's express remedies, and because private contracts are governed by state law, "the federal courts should not be quick to create a policy of nonenforcement of contracts beyond that which is clearly the requirement of the Sherman Act." *Id.* at 519, 79 S.Ct. at 431. Only if "the judgment of the Court would itself be enforcing the precise conduct made unlawful by the [Sherman] Act, the courts are to be guided by the overriding policy, as Mr. Justice Holmes put it, 'of preventing people from getting other people's property for nothing when they purport to be buying it.'" *Id.* 520–21, 79 S.Ct. at 432 (quoting *Continental Wall Paper Co. v. Louis Voight & Sons Co.*, 212 U.S. 227, 271, 29 S.Ct. 280, 296, 53 L.Ed. 486 (1909) (Holmes, J. dissenting).

We are persuaded that the reasoning of *Kelly* applies equally to this case. Plaintiff had fully performed its side of an otherwise valid contract, and we see no basis for permitting defendant to avoid the agreement by wielding the Sherman Act.

We therefore REVERSE the order of the district court granting Olive summary judgment on its defense to the action for breach of contract. We REMAND the case for a disposition of Drury's claim that Olive breached the restrictive covenant in the contract.

---

Cir.1978); *Child World, Inc. v. South Towne Centre, Ltd.*, 634 F.Supp. 1121 (S.D.Ohio 1986); *Optivision, Inc. v. Syracuse Shopping Center Assocs.*, 472 F.Supp. 665 (N.D.N.Y.1979). The closer analogy is the covenant not to compete in employment contracts. For example, in *Lektro-Vend Corp.*, 660 F.2d at 269, the court found a covenant not to compete did not offend Section 1 because "the main purpose of the transaction was legitimate, and the covenants were enforced reasonably with respect to time, geographic scope, and product."