**Richard S. SIMPSON, Plaintiff,**

v.

**UNION OIL COMPANY OF CALIFOR-
NIA, Defendant.**

**Civ. No. 37344.**

United States District Court
N. D. California.

May 25, 1967.

Maxwell Keith, James J. Duryea, San
Francisco, Cal., for plaintiff.

Douglas C. Gregg, E. A. McFadden,
Los Angeles, Cal., Moses Lasky, Richard
Haas, Brobeck, Phleger & Harrison, San
Francisco, Cal., for defendant Union Oil
Co. of California.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

WOLLENBERG, District Judge.

The Supreme Court of the United
States in its decision in this case, Simp-
son v. Union Oil Company of California,
377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d
98 (April 20, 1964) having concluded its
opinion with this statement:

"We reserve the question whether,
when all the facts are known, there
may be any equities that would war-
rant only prospective application in
damage suits of the rule governing
price fixing by the 'consignment' de-
vice which we announce today";

And this Court having on July 20, 1966,
after a series of pre-trial conferences
subsequent to the remand of the cause
from the Supreme Court, entered its
Pre-trial Order in which it ruled and
specified as follows:

"Included in the issues to be tried
is the issue whether the equities war-
rant only prospective application of the
rule announced by the Supreme Court
in this case governing price fixing
by the consignment device; specifi-
cally, in this case, where the facts
occurred before the Supreme Court
announced its rule, whether the equi-
ties preclude application of that rule.
In that connection, upon the trial of
the case, defendant shall be afforded an
opportunity to present to the Court and
to the jury evidence supportive of its
claim that the equities do not warrant
application in this case of the rule
respecting consignment agreements
announced by the Supreme Court."

And the Supreme Court having there-
after, on October 1, 1966, denied a motion
of plaintiff for leave to file a petition

for mandamus by which plaintiff sought to vacate the above quoted provision of the pre-trial order;

And the cause having thereafter duly come on for trial and having been fully tried before Court and jury on January 30, 31, February 1, 2, 6, 7, 8, 9, 13, 14, 16 and 17, 1967, and having been submitted, Maxwell Keith, Esq. and James J. Duryea, Esq. appearing as counsel for plaintiff and Richard Haas, Esq. and E. A. McFadden, Esq. appearing as counsel for defendant;

And the Court having reserved to itself the determination of the aforesaid issue of the equities, and all the facts now being known, the Court, having considered the evidence and the briefs and oral argument of counsel for both parties, now makes the following

## FINDINGS OF FACT

1. In 1954 defendant first conceived the idea of merchandising gasoline, manufactured by it, directly to the consuming public by the agency of consignees to whom it would entrust the possession but to whom it would not transfer the title of its gasoline and who would sell defendant's gasoline at prices determined by it. To this end defendant devised a system of entering into written consignment agreements with retail dealers, both dealers who leased their service stations from the defendant and dealers who did not, whereby the defendant would consign its branded gasoline to said dealers, retain title to the gasoline delivered to the dealers pursuant to the agreements, and specify the retail prices to be charged for defendant's gasoline so delivered.

2. Before adopting said system or putting it into effect the defendant consulted its General Counsel, an attorney at law duly admitted to practice and practicing law in the State of California since 1927, with respect to any legal questions that might be involved, and defendant was advised by its General Counsel that there were no legal objections and that the proposed arrangement and consignment agreements were entirely lawful both under the antitrust laws and all other laws. General Counsel studied, among other things, the then state of the antitrust law, particularly including the opinion and decision of the United States Supreme Court in United States v. General Electric Co., 272 U.S. 476, 47 S.Ct. 192, 71 L.Ed. 362, and decisions following that decision, was entirely satisfied that under that decision and the state of the law consignment and the proposed method of merchandising were lawful in every respect and would not violate the antitrust law.

3. The form and substance of the consignment agreement devised and thereafter used by defendant were modeled upon and were substantially the same as the consignment agreement and arrangement of the General Electric Company which had been upheld in said United States v. General Electric Co., supra, and like the consignment agreement and arrangement used by *General Electric Co.* and involved in that case was true and *bona fide.*

4. Acting in reliance on the legal advice of its General Counsel, defendant thereafter entered into thousands of consignment agreements with retail gasoline dealers, including the consignment agreement with plaintiff hereafter referred to.

5. For approximately one year prior to April 20, 1956 plaintiff had been an employee of defendant in the capacity of one of its retail representatives, and as such it was part of his duties to present the consignment arrangement to the retail dealers in defendant's Santa Maria District. As a result, plaintiff was entirely familiar with the consignment arrangement, with the form of consignment agreement, and with the form of lease used by defendant.

6. On or about April 26, 1956, the plaintiff desired to become a dealer selling gasolines manufactured by defendant and to sublease from defendant a service station located in Fresno, California of which defendant was the lessee. Defendant offered to plaintiff a written sublease of that service station for a term

of one year ending May 22, 1957 and a consignment agreement in the form described above, with the terms and conditions of which he was fully familiar. He accepted the offer and signed the sublease and consignment agreement, and solely by virtue thereof he acquired possession of the service station on May 23, 1956. Thereafter, and on or about April 9, 1957, the defendant offered to plaintiff and the plaintiff accepted a further sublease on said service station for a term of one year ending May 22, 1958 and solely by virtue thereof he remained in possession of said real property.

7. Except in the sense hereafter specifically described, at no time did the defendant subject the plaintiff to any compulsion, duress or coercion, and plaintiff was in no way coerced or compelled to become or remain a dealer of defendant, a lessee of defendant, or to execute a consignment agreement with defendant. Before becoming a lessee and before executing the consignment agreement, plaintiff knew that the defendant was not willing to merchandise its branded gasoline through service stations owned or leased by it except through the agency of consignees and that, unless he was willing to execute a consignment agreement, it was not willing to lease its station to him. Plaintiff had entire freedom of choice and fully exercised free judgment either to contract with defendant on terms mutually agreeable to the two contracting parties or, if the terms on which defendant was willing to contract and upon which it was willing to give possession to plaintiff were not agreeable to him, to refrain from contracting. Only in the sense and only if it be concluded that refusal to deal with plaintiff or to grant him a lease on other terms or efforts to have defendant honor his commitments under what was honestly believed by defendant to be a lawful agreement constituted coercion can it be said that defendant coerced the plaintiff.

8. Plaintiff executed the consignment agreement and thereby obtained the lease from Union and possession of said service station without any intention of abiding by the provisions of the consignment agreement or honoring his commitment thereunder whenever he did not wish to do so.

9. During his occupancy of the station pursuant to said contracts plaintiff repeatedly violated his consignment agreement with defendant by charging for gasoline delivered there under different retail prices than those specified by defendant pursuant to the consignment agreement. Because of said breaches of contract by plaintiff, defendant, acting upon advice of its General Counsel that said consignment agreement was lawful in all respects, refused to sublease the station to plaintiff after the term of the second sublease expired on May 22, 1958, plaintiff vacated the service station, and a judgment was entered in a state court of California, having jurisdiction, that plaintiff was no longer entitled to possession under California law.

10. By the legal principles of California contract law and by the legal principles of California real estate law, apart from application of the rule of antitrust law first announced by the Supreme Court in Simpson v. Union Oil Company of California on April 20, 1964, plaintiff seriously breached his contractual duties and obtained possession of defendant's service station by a promise made without any intention to perform it.

11. In 1954 and at all times thereafter until the Supreme Court's decision in this case on April 20, 1964, it was the general and uniform view that the decision in said United States v. General Electric Co. was the law, that the rule of that case applied to all kinds of merchandise, and was not confined to patented articles. In relying upon that uniform and general understanding of the law, defendant's General Counsel and in turn the defendant acted reasonably and justifiably.

12. Defendant at all times prior to the decision of the Supreme Court on April 20, 1964 reasonably believed that

the consignment agreements between itself and retail gasoline dealers and the actions taken by defendant pursuant thereto were wholly lawful and did not violate the antitrust laws of the United States and defendant was fully justified in that belief.

13. The rule announced by the Supreme Court in Simpson v. Union Oil Company of California on April 20, 1964 was a new rule that changed the law on the subject as it was theretofore generally understood to be.

14. On all the facts as they now have been made known by the trial of this case, it would be unfair and inequitable to apply to this damage action, wherein the operative facts all arose in the years 1956–1958, the rule respecting price-fixing by the consignment device announced on April 20, 1964 in Simpson v. Union Oil Company of California, 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98.

15. If any of the matters hereinbelow stated as a Conclusion of Law is a finding of ultimate fact, the Court so finds as a fact.

And as its

CONCLUSIONS OF LAW

from the foregoing facts the Court concludes as follows:

1. If any of the matters hereinabove stated as a Finding of Fact is a Conclusion of Law, the Court so concludes.

2. The belief of defendant prior to April 20, 1964 that the Retail Dealer Consignment Agreements between itself and retail gasoline dealers and the actions taken by it pursuant thereto were entirely lawful under the antitrust laws was reasonable and warranted by United States v. General Electric Company, 272 U.S. 476, 47 S.Ct. 192, 71 L.Ed. 362 and other authorities.

3. The equities warrant only prospective application to damage suits of the rule respecting price fixing by the consignment device announced on April 20, 1964 in Simpson v. Union Oil Company of California, 377 U.S. 13, 84 S.Ct. 1051,

and, particularly, do not warrant application of said rule to this case.

4. Plaintiff Richard S. Simpson is not entitled to recover anything from defendant, and defendant is entitled to judgment of dismissal with its costs.