Daniel B. **STANTON**

v.

**TEXACO, INC.**

Civ. A. No. 3300.

United States District Court
D. Rhode Island.
Sept. 18, 1968.

John P. Bourcier, Providence, R. I., for plaintiff.

Charles H. Anderson, Providence, R. I., William C. Weitzel, Jr., and William Tousley Smith, New York City, for defendant.

## OPINION

PETTINE, District Judge.

[1] This is a private action seeking treble damages under 15 U.S.C. Sec. 15 [1] for alleged violation of the restraint of trade section of the Sherman Act, 15 U.S.C. Sec. 1 [2] and of the price discrimination section of the Robinson-Patman Act, 15 U.S.C. Sec. 13.[3] This court has jurisdiction under 15 U.S.C. Sec. 15 and 28 U.S.C. Sec. 1337.[4]

The plaintiff, who did business as the Hoxie Four Corners Texaco Station, was a gasoline service station lessee and operator between August, 1961 and late June or early July, 1964. The plaintiff was located in an area of Warwick, R. I. densely populated with retail gasoline service stations. It is understatement to say that the competition is active among service station operators within this geo-

1. 15 U.S.C. Sec. 15 states:

Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

The plaintiff also seeks injunctive relief under 15 U.S.C. Sec. 26. The relationship between the plaintiff and defendant has long since ceased, and injunctive relief is not appropriate here. The cases cited by plaintiff in his pretrial memorandum are inapposite.

2. 15 U.S.C. Sec. 1 states in pertinent part:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, * * * is declared to be illegal * * *.

The plaintiff's complaint also alleges a violation of Sec. 2 of the Sherman Act. Yet, there are no facts stated by plaintiff in any of the documents before this court which even hint at the existence of a monopoly or the assertion of monopolistic power. The court therefore strikes the plaintiff's allegation of a Sec. 2 violation.

3. 15 U.S.C. Sec. 13(a) states in pertinent part:

It shall be unlawful for any person engaged in commerce * * * either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality * * * where the effect of such discrimination may be substantially to lessen competition or to tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them * * *.

The plaintiff's pre-trial memorandum, filed some three-and-a-half years after his complaint, alleges violations of 15 U.S.C. Sec. 13(c) (d) & (e). Again, there is nothing in the record to buttress such tardy and conclusory allegations. The court therefore strikes the plaintiff's allegations of Sec. 2(c) (d) & (e) violations.

4. 28 U.S.C. Sec. 1337 states:

The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies.

graphical zone for the gasoline business of the motoring public. The defendant is a major national oil corporation which leased the plaintiff his gasoline station properties, supplied him petroleum products, and consigned him gasoline, all in accordance with detailed and specific written agreements.

The plaintiff claims that the defendant distributed gasoline to him and, under the terms of the consignment agreement, fixed the minimum resale price of that gasoline in violation of Sec. 1 of the Sherman Act; that his attempts to lower prices in order to remain competitive were thwarted by the termination of the consignment agreement and the cancellation of his lease, and that as a result of these practices by the defendant, he was injured in his business in the amount of $10,000. The plaintiff also claims that the defendant distributed gasoline to him at a price higher than that charged three other retail Texaco service stations in the same geographic area in violation of Sec. 2(a) of the Robinson-Patman Act.

The defendant has moved for summary judgment [5] pursuant to Fed.R.Civ.P. 56 (b),[6] stating that there is no genuine issue of material fact, and that under the law as applied to the allegedly non-disputed facts, it is entitled to judgment.[7] More specifically, the defendant states (1) that the Sec. 1 Sherman Act case law upon which plaintiff relies, Simpson v. Union Oil Co., 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964), must not be ap-plied retroactively, and, under prior established law construing Sec. 1, United States v. General Electric Co., 272 U.S. 476, 47 S.Ct. 192, 71 L.Ed. 362 (1926), defendant's motion must be granted, (2) that even if *Simpson* is the applicable law, defendant's motion must be granted because either (a) there is no restraint of trade because neither the vast distributional system nor the coercive element present in *Simpson* is present in the instant case, or (b) there is no combination or conspiracy in restraint of trade to which defendant is a party, or (c) there is no damage to the plaintiff proximately resulting from the restraint of trade, because the plaintiff was at all times free to shift to a purchase and sale arrangement and hence his own voluntary adherence to the consignment arrangement was the cause of his injury, or (d) the plaintiff is *in pari delicto* with the defendant. With respect to Sec. 2(a) of the Robinson-Patman Act, defendant states that (1) the plaintiff is not a purchaser, because gasoline is distributed to him only on a consignment basis; (2) that even if plaintiff is a purchaser, those Texaco dealers with whom plaintiff competes are not purchasers from Texaco but rather from Pennsylvania Petroleum Products Co., an independent wholesaler-jobber; and (3) that plaintiff is not in competition with Pennsylvania Petroleum Products Co. because plaintiff operates exclusively on the retail level selling to gasoline consumers, while Pennsyl-

---

5. This is actually a renewed motion for summary judgment. Judge Day originally denied the defendant's motion. This court then decided it had the power to reconsider the denial and entertain a renewed motion, especially in the light of the decision of the district court on remand in Simpson v. Union Oil Co., 270 F. Supp. 754 (N.D.Calif.1967).

6. Fed.R.Civ.P. 56(b) states in pertinent part:
   A party against whom a claim * * * is asserted * * * may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.

7. The record before this court for purposes of the summary judgment includes (1) the complaint, (2) the answer, (3) the original motion for summary judgment, (4) the original affidavit of P. R. Whitcomb, a Texaco employee, (5) the Texaco sale agreement—Exhibit A, (6) the Texaco consignment agreement—Exhibit B, (7) the defendant's original brief in support of its original motion, (8) the plaintiff's original brief in opposition to the defendant's original motion, (9) Judge Day's decision denying summary judgment, (10) the defendant's motion and memorandum concerning this court's power to reconsider, (11) the decision of this court to reconsider, (12) the defendant's renewed motion for summary judgment and supporting brief, (13) the deposition of the plaintiff, Stanton, and (14) the pre-trial memoranda of the two parties.

vania Petroleum Products Co. operates exclusively on the wholesale distributional level selling to gasoline retailers.

■ Although the motion for summary judgment serves a useful purpose in expediting judicial administration and foreclosing cases of no merit from the time-consuming and costly process of litigation, its effect, if granted, is so potent that it should be used with great caution. This is especially so with respect to antitrust suits, where appellate decisions treating important questions of public policy are dependent upon well-developed factual records. See Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); White Motor Co. v. United States, 372 U.S. 253, 83 S.Ct. 696, 9 L. Ed.2d 738 (1963) (see especially concurring opinion of Mr. Justice Brennan); Simpson v. Union Oil Co., 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964) (dissenting opinion of Mr. Justice Stewart and memorandum of Mr. Justice Brennan and Mr. Justice Goldberg). The recent decision of the Supreme Court in First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968) is not a blanket endorsement of the summary judgment procedure in antitrust cases. In fact, that summary judgment in the defendant's favor was granted only because of the plaintiff's failure to establish an inference of conspiracy on any reasonable, common sense theory not wholly contradicted by the undisputed facts. There, the plaintiff sought to support an inference of conspiracy between parties whose interests were discordant. Here, however, the plaintiff asserts a plausible theory of vertical combination in restraint of trade.[8]

Against a background of caution, then, this court approaches, first, a statement of the applicable law, and second, an inquiry into the issuability of the factual material before it.

## THE LAW—THE SHERMAN ACT CLAIM

### Retroactivity of Simpson v. Union Oil Co.

■ The defendant asserts that the decision of the Supreme Court in Simpson v. Union Oil Co., 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964) should be given prospective effect only. The defendant states that the law prior to Simpson clearly permitted price fixing by way of the agency-consignment distribution mechanism. United States v. General Electric Co., 272 U.S. 476, 47 S. Ct. 192, 71 L.Ed. 362 (1926). The defendant then seeks to establish its reliance upon General Electric by a comparison of the consignment arrangement there with the consignment agreement in the present case. The defendant finally asserts that its reliance was reasonable. In support of its position the defendant cites principally the decision of the District Court upon remand in Simpson, 270 F.Supp. 754 (N.D.Calif.1967), and another decision, Lyons v. Westinghouse Elec. Corp., 235 F.Supp. 526 (S.D. N.Y.1964). Both of those cases, however, reveal that the courts' decisions as to the retroactivity of Simpson were made only after trial, when the courts had received evidence concerning the actuality of reliance and its reasonability. Neither of those cases, moreover, could have been decided in the light of the very recent decision of the Supreme Court in Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (June 17, 1968). In that case, the Supreme Court stated:

> The theory of the Court of Appeals seems to have been that when a party has significantly relied upon a clear and established doctrine, and the retrospective application of a newly declared doctrine would upset that justifiable reliance to his substantial injury, considerations of justice and fairness require that the new rule apply prospectively only. Pointing to recent decisions of this Court in the area of

8. See infra, this opinion, Sherman Act, Sec. 1 Restraint of Trade and Combination or Conspiracy.

the criminal law, the Court of Appeals could see no reason why the considerations which had favored only prospective application in those cases should not be applied as well in the civil area, especially in a treble damage action. There is, of course, no reason to confront this theory unless we have before us a situation in which there was a clearly declared judicial doctrine upon which United relied and under which its conduct was lawful, a doctrine which was overruled in favor of a new rule according to which conduct performed in reliance upon the old rule would have been unlawful.

The Court then went on to develop the lack of a clearly established older doctrine changed abruptly by innovative principles. By the same reasoning, this court suggests that Simpson v. Union Oil Co., 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964), was not nearly the radical departure from established antitrust law which defendant claims it to be. In fact, in *Simpson* itself the Supreme Court states that *General Electric* should have been read as limited exclusively to situations involving patents. Indeed, it might be argued as a general principle that stability is not the most important characteristic of decisions regulating business conduct with respect to the antitrust laws, and that because of the important social purposes sought to be effectuated by the antitrust laws, decisions upholding business practices which were arguably violative of those laws should be read narrowly, while decisions condemning business practices should be read broadly. There are still further reasons why a rule of non-retroactivity is dissatisfactory. Perhaps the most basic is that the plaintiff, who takes the risk and cost of the litigation derives no benefit, even though there is a judicially recognized wrong, while all subsequent persons similarly situated take, parasite-like, the full benefit of the plaintiff's pathbreaking. Moreover, a rule of non-retroactivity totally ignores the compensatory aspect of a treble damages award. It must be remembered that the purpose of a treble damages award is not solely to deter the violator, but also to compensate the injured party. At the very minimum, one-third of every treble damages award is devoted solely to the restoration of the plaintiff's competitive status. Perhaps the underlying reason for the various courts' decisions not to apply the *Simpson* case retroactively is the genuine fear that persons who relied upon what they deemed to be the law, and who are, hence, non-culpable persons, are burdened with punitive damages, at least with regard to approximately two-thirds of the judgment. One solution to this problem may be to allow the defendant to mitigate damages. While it is possible that the imperative mode of the treble damages statute precludes such a solution, the equities are strong enough to suggest an innovative case-law gloss. See Comment: Retroactive Application of Overruling Decisions in Antitrust Treble Damages Suits. 1967 U.Ill.L.Forum 837. For purposes of this motion for summary judgment, then, this court holds that Simpson v. Union Oil Co., 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964) is applicable. The court, however, suggests that evidence be presented at trial as to the actuality and reasonability of the defendant's reliance on *General Electric*. The court further suggests that all counsel give consideration to the previously mentioned mitigation of damages theory. Finally, the court invites reconsideration of this question of law after trial.

*Sec. 1 Restraint of Trade*

Resale price maintenance is *per se* illegal under Sec. 1 of the Sherman Act because it constitutes an unjustifiable restraint on trader discretion in pricing practices, Albrecht v. Herald Co., 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968), and because it tends to lessen horizontal competition at the retail level. United States v. Trenton Potteries Co., 273 U.S. 392, 47 S.Ct. 377, 71 L.Ed. 700 (1927); United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L. Ed. 1129 (1940).

Whether what is *per se* impermissible if done by way of sale—price fixing, in

this case—becomes permissible when carried out by way of consignment or agency is a much mooted question. Defendant states that it does and seeks to avoid the impact of Simpson v. Union Oil Co., 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964) by distinguishing it on two grounds: (1) the coercive element of consignment selling brought about in *Simpson* by forcing the retailer to either sell on consignment or not sell at all is absent from this case where the consignee is free to change to a number of different possible programs, including a purchase and sale program; and (2) the large-scale use of consignment price-fixing present in *Simpson* is not present in the instant case. Defendant reads *Simpson* too narrowly. In that case, in response to the defendant's argument that dealers were free to refuse to deal with the defendant if they objected to its price-rigging, the Court stated:

> If that were a defense, a supplier could regiment thousands of otherwise competitive dealers in resale price maintenance programs, merely by fear of nonrenewal of short-term leases.

We made clear in United States v. Parke, Davis & Co., 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505, that a supplier may not use coercion on its retail outlets to achieve resale price maintenance. We reiterate that view, adding that *it matters not what the coercive device is*. (Emphasis added.)

■ In the instant case, the defendant has simply added other supposed options to the dealer's right to refuse to sell. But if those are not realistic competitive options—and the plaintiff has claimed they are not—then the dealer is put to the same futile choice here as he was in *Simpson:* follow the prices or get out. Nor is the vastness of the defendant's system a *sine qua non* for a Sec. 1 violation. Admittedly, the defendant in *Simpson* maintained prices on a broad scale. But *Simpson* was a Sec. 2 monopoly as well as a Sec. 1 restraint case. Moreover, in the light of Albrecht v. Herald Co., 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968), a vertically imposed price restraint operating upon only

a single dealer could be a violation of Sec. 1. To say the least, when a major national oil company uses a consignment agreement, policed by a lease, to maintain the gasoline prices of its dealer-lessee, there is sufficient restraint on alienation and possible threat to dealer competition to mandate a trial on the matter. Albrecht v. Herald Co., 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968); Simpson v. Union Oil Co., 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964).

Contrary to the theory of at least one person, see Hitchcock, Schwinn: Coaster Brake for Simpson?, 54 A.B.A.J. 574 (June, 1968), the recent decision of the Supreme Court in United States v. Arnold Schwinn & Co., 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967) does not condone vertical price-fixing by way of consignment. That case only subjects to the scrutiny of the rule of reason less competitively dangerous means of vertical restraint, namely consignment arrangements involving exclusive territorial and customer restrictions.

The decision of the First Circuit in Quinn v. Mobil Oil Co., 375 F.2d 273 (1967) does not dictate a contrary result. In that case, Judge McEntee limited himself to the absence of a combination or conspiracy. Judge Coffin's opinion with respect to vertical setting of maximum prices is distinguishable because the instant case involves fixing minimum prices, and at any rate, Judge Coffin's rationale has been overruled by Albrecht v. Herald Co., 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968). Judge Aldrich's opinion does not conflict with the decision of this court.

*Combination or Conspiracy*

The complaint in the instant case, much like that in *Albrecht*, alleges the formation of a combination or conspiracy without specifying its makeup. The defendant suggests that there is no combination or conspiracy. Detailed consideration need not here be given to the developing definitional content of the statutory term "combination." See Turner, The Definition of Agreement Under the Sherman Act: Conscious

Parallelism and Refusals to Deal, 75 Harv.L.Rev. 655 (1962); Note "Combinations" in Restraint of Trade: A New Approach to Sec. 1 of the Sherman Act, 1966 Utah L.Rev. 75. Suffice it to say that the facts alleged in the instant case make out one or more of the following combinations: (1) a combination between the defendant and its dealers to fix prices on the retail level, Albrecht v. Herald Co., at p. 150 & n. 6, 88 S.Ct. 869; United States v. Arnold Schwinn & Co., 388 U.S. 365, 372, 87 S.Ct. 1856, 18 L.Ed. 2d 1249 (1967); (2) a combination between the defendant and the plaintiff, Albrecht v. Herald Co., 390 U.S. at p. 150 & n. 6, 88 S.Ct. 869; United States v. Parke, Davis & Co., 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960); Simpson v. Union Oil Co., 377 U.S. 13, 84 S. Ct. 1051, 12 L.Ed.2d 98 (1964); First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 280 n. 16, 88 S. Ct. 1575, 20 L.Ed.2d 569 (1968); Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 141–142, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968); (Judge McEntee's opinion in Quinn v. Mobil Oil Co., 375 F.2d 273 (1 Cir. 1967) is distinguishable because there is here both a consignment agreement and prior acquiescence to the defendant's price dictates.) (3) a combination between the defendant and the plaintiff's customers, Albrecht v. Herald Co., 390 U.S. at p. 150 & n. 6, 88 S.Ct. 869. This court is, therefore, prepared to go to trial on the question of combination or conspiracy. It is the suggestion of the court, however, that counsel for the plaintiff be prepared at the beginning of trial to specify which of the above or any other theories of combination or conspiracy he will present. Fed.R.Civ.P. 8(e) (f). See Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 142, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968).

*Proximate Cause*

The defendant argues that "since plaintiff had the absolute freedom to terminate the consignment arrangement at any time, any injury that he might have sustained by failing to do so was his own doing." Defendant's Brief In Support of Motion for Summary Judgment at p. 16. The statement of Mr. Justice Douglas in *Simpson* supplies the short answer to that contention:

> If the "consignment" agreement achieves resale price maintenance in violation of the Sherman Act, it and the lease are being used to injure interstate commerce by depriving independent dealers of the exercise of free judgment whether to become consignees at all, or remain consignee, and, in any event, to sell at competitive prices. The fact that a retailer can refuse to deal does not give the supplier immunity if the arrangement is one of those schemes condemned by the antitrust laws.

Cf. Perma Life Mufflers v. International Parts Corp., 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968).

*In Pari Delicto*

The defendant also contends that "(P)laintiff is also precluded from seeking to recover for injuries from the consignment agreement because, even if the agreement were unlawful, his continued voluntary adherence to it places him squarely within the *pari delicto* doctrine." Defendant's Brief In Support of Motion for Summary Judgment at p. 17. The recent decision of the Supreme Court in Perma Life Mufflers v. International Parts Corp., 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968) completely disposes of this defense.

## THE LAW—THE ROBINSON-PATMAN ACT CLAIM [9]

*Sec. 2(a)—Consignment*

The defendant asserts that the plaintiff's Robinson-Patman Act theory is faulty because the plaintiff was not a "purchaser" of Texaco gasoline but was only a consignee.[10] A close reading of the several cases cited by the defendant

---

9. See, supra, note 3.

10. For a statement of the statutory language here pertinent, see supra, note 3. THE ROBINSON—PATMAN ACT

fails to reveal any specific holding that a consignee retailer cannot be a "purchaser" for purposes of Sec. 2(a) of the Robinson-Patman Act. In fact, the case which most nearly reaches such a holding, Students Book Co. v. Washington Law Book Co., 98 U.S.App.D.C. 49, 232 F.2d 49 (1955), cert. denied, 350 U.S. 988, 76 S.Ct. 474, 100 L.Ed. 854 (1956), does so only after a full trial going directly to the reality of the consignment device and to a comparison and contrast of the consignment and purchase-sale distribution mechanisms. This court is likewise inclined to reach the legal question concerning the alleged distinction between purchase and consignment only after a full trial. While the court, therefore, declines to pass on that question at this time, it does suggest that counsel be prepared to argue the question subsequent to the presentation of evidence. The court further expects counsel at such argument to discuss two important issues with respect to this matter: (1) whether the purposes of Sec. 2(a) of the Robinson-Patman Act would be effectuated by an elaboration of the statutory term "purchaser" such that a consignee is not within the section; (2) whether Sec. 2(a) of the Robinson-Patman Act should be construed *in pari materia* with Sec. 1 of the Sherman Act and the cases thereunder.

### Competitors as Purchasers

The defendant contends that even if the plaintiff is a purchaser within the meaning of the Act his alleged competitors were not, because they purchased not from Texaco but from Pennsylvania Petroleum Products Co., an independent wholesaler. Defendant's statement of the law appears to be correct. However, as will appear below,[11] the status of the Pennsylvania Products Co. presents a genuine issue of material fact.

11. See, infra, this opinion, THE FACTS —THE ROBINSON-PATMAN ACT CLAIM.

12. Ibid.

### Middleman as Competitor

Defendant finally asserts that even if it sold to Pennsylvania Petroleum Products Co. at a price lower than its price to plaintiff there can be no competitive injury, because the plaintiff discriminatee operates on a different horizontal level than the favored purchaser. Here again, the defendant's legal theory appears sound. However, as will appear below,[12] the plaintiff differs with the defendant as to the defendant's alleged exclusive wholesaler status.

### THE FACTS—THE SHERMAN ACT CLAIM [13]

Several genuine issues of material fact are revealed by this record. (1) Did the defendant rely upon *General Electric* and was its reliance reasonable? (2) What is the shape of the geographic zone for purposes of competition? (3) Was the plaintiff genuinely free to shift to some other competitively realistic program? (4) What was the reason for the cancellation of the plaintiff's lease and the temporary nondelivery of gasoline to the plaintiff? (5) How much is the consignment device used by Texaco in the Rhode Island market? (6) What other distribution methods are used and how do they differ from the consignment method? (7) Was there any combination or conspiracy? (8) If so, what is its makeup? (9) Was the defendant's conduct the cause-in-fact of the plaintiff's harm or was stiff competition the cause? (10) What specific damages did the plaintiff suffer?

### THE FACTS—THE ROBINSON-PATMAN ACT CLAIM

There are several genuine issues of material fact with respect to the plaintiff's Robinson-Patman Act claim. (1) What is the nature of the vertical relationship between the plaintiff and

13. At this juncture, there is no need for this court to document meticulously the basis for every factual dispute arising out of the numerous documents before it. A general enumeration of the areas of relevant dispute will suffice.

the defendant? (2) What is the nature of the relationship between Texaco and Pennsylvania Petroleum Products Co., with particular respect to the alleged retail competitors of plaintiff? (3) What is the status of Pennsylvania on the distributional chain—is it exclusively a wholesaler or does it also operate at the retail level?

CONCLUSION AND CAVEAT

For the above stated reasons, this court has determined that a trial is appropriate in this case. Counsel need not be reminded that the administration of an antitrust case is a difficult and time-consuming matter. Preparation and precision on the part of counsel are most helpful to the court. To date, the court's burden has been considerably increased by the absence of these elements. It is the expectation of this court that the trial of this case will be approached with a more narrow compass than has heretofore guided the proceedings.

For the reasons recited herein, the motion is hereby denied.